THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEAN PAYTON, Defendant-Appellant.

First District (4th Division)    No. 1—03—1317

Opinion filed March 24, 2005.

Michael J. Pelletier and Samuel Algozin, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, and Heather Weiss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a jury trial, defendant Jean Payton was found guilty of first degree murder and sentenced to 25 years in prison. On appeal, defendant contends that: (1) the trial court improperly instructed the jury regarding first degree murder and precluded the jury from considering the offense of second degree murder; (2) the trial court provided an improper response to the jury's question regarding the elements of first degree murder; (3) her conviction for first degree murder was improper where the offense of aggravated battery was insufficient to support a felony murder conviction; (4) the trial court's jury instructions on involuntary manslaughter were improper; (5) defendant was denied her right to a fair trial where the prosecutor made improper closing remarks; and (6) her sentence is excessive. For the following reasons, we reverse and remand for a new trial.

## I. BACKGROUND

The evidence at trial showed that on August 31, 2000, at about

1 a.m., Kiffany Davis was standing outside a liquor store near Roosevelt and Avers Streets, in Chicago, with her twin sister Tiffany Davis, Matrice Yarbrough and defendant. Samuel Clayton was inside a restaurant adjacent to the liquor store.

Defendant went into the liquor store to purchase beer for Matrice, who was underage. While Kiffany, Tiffany and Matrice waited in front of the liquor store, Brian Alford approached 18-year-old Kiffany and asked her if she would be his girlfriend. Kiffany laughed and told Alford that she was not interested. Kiffany testified that Alford appeared to be 40 years old and drunk at the time and that she thought "it was funny" that he asked her to be his girlfriend.

Defendant then came out of the liquor store and handed Matrice a bag containing beer. Defendant heard Alford speaking to Kiffany and told him to leave her alone and that he was too old for her. Kiffany testified that defendant argued with Alford and began "cussing him out." Kiffany, Tiffany and Matrice went into the liquor store to purchase cigarettes, and when they came back, Alford and defendant were still arguing. Kiffany testified that Alford called defendant a "15-cent hoe" and defendant looked like she was going to hit him. Alford then pulled a box cutter from his pocket, but the blade was not out.

While Alford was holding the box cutter, Clayton came out of the restaurant, approached Alford and exchanged words with him. Kiffany testified that Alford pushed Clayton and then ran away, but he was no longer holding the box cutter. Matrice testified that she saw Alford put the box cutter in his pocket and back up into the middle of the street while holding his hands up "like he didn't want no problem, no trouble." Matrice then saw Alford back up around a car that was parked in the street and run down the street toward a gas station. Defendant and Clayton ran after Alford and caught up to him near the gas station, about a half block away. Clayton punched Alford in the nose and the head, and Alford fell facedown onto the pavement.

Kiffany testified that she saw Alford attempt to get up and he had his upper body lifted when defendant walked over to him and started punching him in the face. Alford fell and defendant started kicking him. Kiffany further testified that defendant repeatedly kicked Alford in the head, including after Alford was lying still and no longer trying to stand up. Kiffany went inside the restaurant and asked someone to call the police. Matrice testified that she was talking to her boyfriend and did not see defendant strike Alford but saw Clayton and defendant walk back toward the liquor store together while Alford was lying on the ground. When defendant returned to the area where Matrice was standing, Matrice saw defendant shaking her hands and heard her say that her hands were swollen. Shortly thereafter, Kiffany, Tiffany, Ma-

trice and defendant all walked to defendant's home. Tiffany testified that while the group was walking, defendant stated that she had "kicked the *** out of that mother------."

Paramedic John Leen testified that when he arrived at the gas station, Alford was lying facedown on the ground. Alford was bleeding from his nose and mouth and had lacerations to his chin and above his eye. Alford was taken to the hospital, where he remained in a coma until he died on September 9, 2000. Dr. Adrienne Segovia testified, as an expert in forensic pathology, that she reviewed the report of the examining physician, and her opinion was that Alford died as a result of cerebral injuries, caused by blunt head trauma.

Chicago police officer Clifford Russell testified that on September 11, 2000, he and other police officers went to defendant's apartment building at 1509 South Ridgeway Avenue in Chicago. Officer Russell was standing next to the building while other officers knocked on defendant's apartment door. Officer Russell then saw defendant climb out of a window and ordered her to stop. Defendant attempted to flee from the area, but Officer Russell apprehended her and placed her in custody.

Detective Wolverton testified that after defendant was arrested, he advised defendant of her *Miranda* rights and she agreed to an interview. Defendant told Detective Wolverton that on the date in question, she went into the liquor store to purchase beer. When she came out of the store, she heard Alford making "sexual advances" toward her friend Kiffany. Defendant told Detective Wolverton that she approached Alford and told him not to speak to Kiffany in that manner. Alford then called defendant a "15-cent hoe," and after they began arguing, Alford pulled out a box cutter. Shortly thereafter, Clayton began arguing with Alford. Defendant heard Clayton say to Alford, "you don't know me, I will kill you." Defendant saw Alford walk away and watched Clayton follow him and then hit Alford twice in the head. After being struck by Clayton, Alford fell to the ground. Defendant approached Alford and noticed that he was bleeding from his nose. Defendant stated that she stood over Alford and shook her hands in a nervous motion, then walked away. In a subsequent interview, defendant told Detective Wolverton that she kicked Alford several times while he was on the ground to see if he would respond.

Assistant State's Attorney (ASA) James Papa testified that he took a written statement from defendant on September 11, 2000. In that statement, defendant provided a version of events that was substantially similar to the interview with Detective Wolverton. In the written statement, defendant also admitted that after Alford fell to the ground, she kicked him and hit him in the face with her fists.

Following this evidence, the jury was instructed on first degree murder and the lesser offenses of second degree murder and involuntary manslaughter. The jury found defendant guilty of first degree murder and defendant was sentenced to 25 years in prison.

## II. ANALYSIS

On appeal, defendant first contends that the trial court's jury instructions regarding first degree murder were contradictory, confusing and improper. Defendant argues that reversal is required in this case because the trial court's improper jury instructions on first degree murder allowed the jury to convict defendant of first degree murder without considering the offense of second degree murder.

Pursuant to section 9—2(a) of the Illinois Criminal Code of 1961 (Code) (720 ILCS 5/9—2(a) (West 2000)), as amended by Public Act 84—1450 (Pub. Act 84—1450, § 2, eff. July 1, 1987), the offense of second degree murder may not be based on a charge of first degree felony murder under section 9—1(a)(3) of the Code (720 ILCS 5/9—1(a)(3) (West 2000)). See *People v. Villarreal*, 198 Ill. 2d 209, 230 (2001). Accordingly, Illinois Pattern Jury Instructions, Criminal (4th ed. 2000) (hereafter IPI Criminal 4th), provides that when first degree felony murder under section 9—1(a)(3) is charged and either first degree intentional murder under section 9—1(a)(1) or first degree strong probability murder under section 9—1(a)(2) is also charged, and the trial court is also instructing on the lesser offense of second degree murder and the lesser included offense of involuntary manslaughter, IPI Criminal 4th No. 7.02 should be used for the felony murder count under section 9—1(a)(3), and IPI Criminal 4th No. 7.04X should be used for the other first degree murder counts (*i.e.*, first degree intentional murder and/or first degree strong probability murder) upon which second degree murder and involuntary manslaughter may be based. See IPI Criminal 4th No. 7.04X, Committee Note.

In this case, defendant was charged with both first degree felony murder and first degree intentional and first degree strong probability murder, and the jury was also instructed on the lesser offenses of second degree murder and involuntary manslaughter. Therefore, pursuant to IPI Criminal 4th, the trial court should have used IPI Criminal 4th No. 7.02 to instruct the jury on the first degree felony murder count and IPI Criminal 4th No. 7.04X to instruct the jury on the first degree intentional and first degree strong probability murder counts.

IPI Criminal 4th No. 7.02 (Issues In First Degree Murder (When Second Degree Murder Is Not Also An Issue)) reads as follows:

"To sustain the charge of first degree murder, the State must prove the following propositions:

*First Proposition:* That the defendant performed the acts which caused the death of [the victim]; and

*Second Proposition:* That when the defendant did so,

[1] he intended to kill or do great bodily harm to [the victim];

[or]

[2] he knew that his acts would cause death to [the victim];

[or]

[3] he knew that his acts created a strong probability of death or great bodily harm to [the victim];

[or]

[4] he was [(attempting to commit) (committing)] the offense of _____.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

IPI Criminal 4th No. 7.04X (Issues Where Jury Instructed On First Degree Murder And Second Degree Murder (Provocation) And Involuntary Manslaughter) provides the following instruction to the jury:

"To sustain the charge of first degree murder, or the charge of second degree murder the State must prove the following propositions:

*First Proposition:* That the defendant performed the acts which caused the death of [the victim]; and

*Second Proposition:* That when the defendant did so,

[1] he intended to kill or do great bodily harm to [the victim];

[or]

[2] he knew that his acts would cause death to [the victim];

[or]

[3] he knew that his acts created a strong probability of death or great bodily harm to [the victim].

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, your deliberations on first degree murder and second degree murder should end, and you should go on with your deliberations to decide whether the defendant is guilty of involuntary manslaughter.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, then you should go on with your deliberations to decide

whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder instead of first degree murder.

You may not consider whether the defendant is guilty of the lesser offense of second degree murder until. and unless you have first determined that the State has proved beyond a reasonable doubt each of the previously stated propositions.

The defendant has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder. By this I mean that you must be persuaded, considering all the evidence in this case, that it is more probably true than not true that the following mitigating factor is present: that the defendant, at the time he performed the acts which caused the death of [the victim], acted under a sudden and intense passion resulting from serious provocation by [(the deceased) (some other person he endeavors to kill, but he negligently or accidentally kills the deceased)]."

The record shows that the trial court gave the jury the complete version of IPI Criminal 4th No. 7.02, rather than including only the language on the first degree felony murder count. Accordingly, under the instruction as given, the jury could have found defendant guilty of first degree intentional murder or first degree strong probability murder without considering the existence of the mitigating factor which could have reduced the offense to second degree murder.

In addition, the trial court provided the following IPI Criminal 4th No. 7.04X instruction to the jury:

"To sustain either the charge of first degree murder or the charge of second degree murder, the State must prove the following propositions:

*First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Brian Alford; and

*Second*: That when the defendant, or one for whose conduct he is legally responsible, did so, he intended to kill or do great bodily harm to Brian Alford;

or

he knew that such acts would cause death to Brian Alford;

or

he knew that such acts created a strong probability of death or great bodily harm to Brian Alford; *or he was committing the offense of aggravated battery.*

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable

doubt, your deliberations on first degree murder and second degree murder should end, and you should go on with your deliberations to decide whether the defendant is guilty of involuntary manslaughter.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, then you should go on with your deliberations to decide whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder instead of first degree murder.

You may not consider whether the defendant is guilty of the lesser offense of second degree murder until and unless you have first determined that the State has proved beyond a reasonable doubt each of the previously stated propositions.

The defendant has the burden of proving by a preponderance of the evidence that a mitigating factor is present so that he is guilty of the lesser offense of second degree murder instead of first degree murder. By this I mean that you must be persuaded, considering all the evidence in this case, that it is more probably true than not true that the following mitigating factor is present: that the defendant, at the time he performed the acts which caused the death of Brian Alford, acted under a sudden and intense passion resulting from serious provocation by the deceased." (Emphasis added.)

This instruction failed to follow IPI Criminal 4th No. 7.04X, which excludes the felony murder count. The trial court's instruction was therefore erroneous where it instructed the jury that defendant could be found guilty of second degree murder based on a charge of first degree felony murder. *Villarreal*, 198 Ill. 2d at 229-30.

Defendant also suggests that IPI Criminal 4th No. 7.04X should be modified so that the jury is instructed to consider the offense of involuntary manslaughter simultaneously with the first degree murder charges. Defendant suggests that this modified instruction would allow the jury to first make a threshold determination as to whether the defendant's conduct was reckless or intentional or knowing. If the jury finds the defendant's conduct was reckless, it would then continue deliberating as to the remaining elements of the involuntary manslaughter charge. If the jury finds the defendant's conduct was intentional or knowing, it would continue deliberating as to the remaining elements of the first degree murder charge. However, because we reverse based on the instructional errors in this case, we need not consider defendant's proposed modification.

In instructing the jury, the trial court also failed to distinguish between the two different categories of first degree murder pursuant

to IPI Criminal 4th No. 7.01X (Explanation To Jury Of The Reason For Designating One Category Of First Degree Murder To Be (Type A) And Another Category Of First Degree Murder To Be (Type B)) and Sample Instruction 27.05.

IPI Criminal 4th No. 7.01X provides that this instruction is required when the jury is going to be instructed on second degree murder. "Since the jury may be instructed on second degree murder as a lesser offense *only* of 'knowing or intentional murder' (9—1(a)(1) or 9—1(a)(2)) and not of felony murder (9—1(a)(3)), the court must distinguish in its instructions between these two different categories of first degree murder." (Emphasis in original.) IPI Criminal 4th No. 7.01X, Committee Note, at 190. The Committee Notes further suggest that the trial court use "the designations (Type A) and (Type B) to distinguish between these two categories of first degree murder" and refer to Sample Set 27.05 for an example of the use of this instruction. IPI Criminal 4th No. 7.01X, Committee Note, at 190.

The IPI Criminal 4th Sample Set No. 27.05 describes first degree intentional or knowing murder as "Type A" and instructs the jury that if it finds the defendant guilty of "Type A" first degree murder, then it "should go on with [its] deliberations to decide whether a mitigating factor has been proved so that the defendant is guilty of the lesser offense of second degree murder instead of first degree murder (Type A)." The instruction also describes felony murder as "Type B" and excludes the instruction to consider second degree murder if the jury finds defendant guilty of first degree murder Type B. In this case, the trial court erred by failing to distinguish between the two categories of first degree murder by using the designations "Type A" and "Type B" pursuant to the IPI instructions. The trial court's failure to treat the felony murder count as a separate and different charge from first degree intentional or strong probability murder in this case warrants reversal in this case. *Villarreal*, 198 Ill. 2d at 229-30.

Moreover, pursuant to our supreme court's holding in *People v. Morgan*, 197 Ill. 2d 404, 448-50 (2001), the trial court erred in instructing the jury that defendant could be found guilty of first degree felony murder based on the aggravated battery which caused the death of the victim.

In *Morgan*, our supreme court held that "where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." *Morgan*, 197 Ill. 2d at 447. The *Morgan* defendant, who was 14 years old at the time, was convicted of second degree murder for shooting his grandfather and first degree murder for shoot-

ing his grandmother. The trial court had instructed the jury on first degree intentional and knowing murder, and first degree felony murder. The supreme court determined that the predicate felonies of aggravated battery and aggravated discharge of a firearm "arose from and were inherent in the murders" of the defendant's grandparents and, therefore, the jury should not have been instructed that the defendant could be convicted of first degree murder on a felony murder theory. *Morgan*, 197 Ill. 2d at 447-48.

However, the supreme court in *Morgan* found that the trial court's error in instructing the jury on felony murder did not constitute reversible error. The court noted that while defendant was charged with intentional, knowing and felony murder, a general verdict was entered finding defendant guilty of murder. Such a general verdict raised the presumption that the jury found the defendant committed the most serious crime alleged: intentional or knowing murder. *Morgan*, 197 Ill. 2d at 448. The supreme court also noted that it could presume that the jury found the defendant guilty of intentional or knowing murder rather than felony murder based on the fact that the jury found the defendant guilty of the second degree murder of his grandfather.

The court explained that second degree murder instructions were given only on the charges of intentional or knowing murder and not on the felony murder charges. Consequently, in convicting the defendant of second degree murder, the jury must have believed the defendant was guilty of the intentional or knowing murder of his grandfather, but that one of the mitigating factors set forth in the second degree murder statute was present. The jury therefore rejected the State's felony murder theory as to the grandfather. The supreme court further reasoned that had the jury believed that the defendant was guilty of first degree felony murder with regard to the grandmother, it would have followed that the defendant was guilty of first degree felony murder with regard to the grandfather where the charges were identical. *Morgan*, 197 Ill. 2d at 451.

In this case, the forcible felony underlying the charge of felony murder, aggravated battery, was an act that was inherent in, and arose out of, the fatal beating of Brian Alford. The act of punching and kicking the victim formed the basis of the predicate felony of aggravated battery, but was also the same act underlying the killing. Therefore, it is clear that the predicate felony underlying the charge of felony murder involved conduct that arose from and was inherent in the act of the murder itself. Accordingly, the trial court erred in instructing the jury on felony murder.

Unlike *Morgan*, where the defendant was convicted of the second

degree murder of his grandfather, there is no evidence in this case which would support an inference that the jury did not find defendant guilty of felony murder based on the predicate felony of aggravated battery of the victim. Accordingly, we cannot say that the error is harmless in this case because the result of the trial may have been different if proper instructions had been given. *People v. Alvine*, 173 Ill. 2d 273, 290 (1996).

The State argues before us, as it did in the trial court, that the felony murder charge was proper in this case pursuant to our supreme court's determination in *People v. Viser*, 62 Ill. 2d 568 (1975). In *Viser*, our supreme court addressed whether aggravated battery could be the underlying felony in a felony murder charge where the aggravated battery was alleged to have been committed against the person who eventually died. The defendants in *Viser* had claimed that the indictments against them failed to properly charge murder where they alleged that the defendants had each caused the death of the victim, Hector Jordan, as they were attempting to commit or were committing a forcible felony upon Hector Jordan, namely, aggravated battery. *Viser*, 62 Ill. 2d at 577. The defendants argued that the indictments would have been proper only if the indictments had charged that the defendants killed Hector Jordan while committing an aggravated battery upon the surviving victim, Harold Smith. *Viser*, 62 Ill. 2d at 578.

The supreme court noted that, at common law, any unlawful killing occurring during the commission of any felony was murder. *Viser*, 62 Ill. 2d at 578. The court also noted that the Illinois Criminal Code of 1961 (Code) limited the predicate offenses underlying felony murder to " 'a forcible felony other than voluntary manslaughter [now second degree murder],' " and further noted that aggravated battery was a forcible felony. *Viser*, 62 Ill. 2d at 578-79, quoting Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(3).

The supreme court then noted:

"The [merger] doctrine relied upon by the defendants appears to have been thought necessary in some jurisdictions in which the offense of murder is divided into degrees:

'As previously shown, at common law, homicide resulting from an assault committed with intent to inflict serious bodily harm was classified as murder. Consequently there was no confusion between degrees of murder if the same act were punishable as felony-murder as well. But with the advent of the codified degrees of homicide it became necessary to devise methods of preserving the distinctions between those degrees.' Note, *The Doctrine of Merger in Felony-Murder and Misdemeanor-Manslaughter*, 35 St. John's L. Rev. 109, 117 (1960)." *Viser*, 62 Ill. 2d at 579.

The court noted that as a result of the classification of degrees of murder, "it has been held that an assault upon the person killed cannot be made the basis of a felony murder charge." *Viser*, 62 Ill. 2d at 579.

The supreme court then explained that the defendants' argument was based "in part upon a theory of merger, designed, as has been indicated, to support or accommodate a classification of degrees of murder, and in part upon assumptions about the particular kind of criminal conduct that the offense of felony murder was intended to deter." *Viser*, 63 Ill. 2d at 579-80. In rejecting the defendants' argument, the supreme court noted "[o]ur Criminal Code does not establish degrees of murder" and that what the legislature intended in establishing the offense of felony murder "was to deter the commission of any of the enumerated forcible felonies, including aggravated battery, by holding the perpetrator responsible for murder if death results." *Viser*, 63 Ill. 2d at 580. Consequently, the court held that the indictment charging the defendants with felony murder based upon the aggravated battery of the deceased victim was not improper. *Viser*, 62 Ill. 2d at 580.

However, the supreme court's decision in *Viser* predated its determination in *Morgan* that "where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." *Morgan*, 197 Ill. 2d at 447. In addition, the supreme court's holding in *Viser* was based on the fact that the Code at the time did not establish degrees of murder. Since the decision in *Viser*, the Code has been amended to provide such classification of degrees of murder. See 720 ILCS 5/9—1, 9—2 (West 2000) (as amended by Pub. Act 84—1450, § 2 eff. July 1, 1987) (creating the offenses of first degree murder and second degree murder). Accordingly, we find the State's reliance on *Viser* unavailing.

Furthermore, contrary to the State's argument, we cannot presume that the jury found the defendant guilty of any good count in the indictment based on the fact that a general verdict was returned in this case. Here, the trial court not only failed to instruct the jury pursuant to IPI Criminal 4th No. 7.01X, but also provided erroneous instructions under IPI Criminal 4th Nos. 7.02 and 7.04X, and improperly instructed the jury that it could consider the aggravated battery of the victim as a basis for convicting defendant of first degree felony murder. While the jury may have found defendant guilty of first degree intentional or strong probability murder, any such verdict also could not stand because it may have been based on the erroneous IPI Criminal 4th No. 7.02 instruction. Consequently, there is not "one

good count" upon which the general verdict could be affirmed. *Cf. People v. Sample*, 326 Ill. App. 3d 914, 929 (2001) (reversal not required where a general verdict of guilty was presumed to be based on any good count in the indictment to which the proof was applicable).

Because we reverse based on the trial court's erroneous jury instructions, we need not consider defendant's further contentions on review.

## III. CONCLUSION

For the reasons we have stated, defendant's conviction is reversed. Because we find there is ample evidence to support a guilty verdict, double jeopardy considerations do not prevent a retrial. *People v. Chavez*, 338 Ill. App. 3d 835, 844 (2003). Therefore, the case is remanded for a new trial.

Reversed and remanded.

REID, P.J., and THEIS, J., concur.