2007 OK CR 22

**Carla Renee QUILLEN, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2005–243.

Court of Criminal Appeals of Oklahoma.

June 14, 2007.

2. See cases cited in footnote 6 of the majority Opinion.

David Slane, Isaac Funderburk, Oklahoma City, OK, attorneys for defendant at trial.

Patricia High, Assistant District Attorney, Oklahoma City, OK, attorneys for the state at trial.

Katrina Conrad–Legler, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jennifer L. Strickland, Assistant Attorney General, Oklahoma City, OK, attorneys for the State on appeal.

## SUMMARY OPINION

C. JOHNSON, Vice–Presiding Judge.

¶ 1 Appellant, Carla Renee Quillen, was charged with First Degree Child Abuse Murder (Count I) and Unlawful Removal of the Dead, After Former Conviction of Two or More Felonies (Count II), in Oklahoma County District Court, Case No. CF–2002–3179. The jury convicted Appellant of the lesser offense of Second Degree Felony Murder in Count I and the crime charged in Count II. They assessed punishment at twenty-five years imprisonment on Count I and twenty years imprisonment on Count II. The Honorable Ray C. Elliott sentenced Appellant in accordance with the jury's recommendations and ordered the sentences to run consecutively. Appellant timely filed this appeal in which she raises the following propositions of error:

1. Appellant's conviction for Second Degree Felony Murder must be vacated because the merger doctrine prohibits the use of the act which allegedly caused the decedent's death from being used as the predicate felony in a felony murder prosecution.

2. Appellant's Fourteenth Amendment due process rights pursuant to the United States Constitution were violated when the jury was erroneously instructed as to the range of punishment for Count II, Unlawful Removal of the Dead.

3. The prosecutor abused her discretion by filing and then seeking a conviction in Count II, Unlawful Removal of the Dead.

4. The trial judge abandoned his role of impartiality when he went beyond the uniform jury instructions during voir dire.

5. Prosecutorial misconduct deprived Appellant of a fair trial.

6. Appellant's sentence is excessive.

7. The cumulative effect of all the errors addressed above deprived Appellant of a fair trial.

¶ 2 After thorough consideration of the propositions, and the entire record before us on appeal, including the original record, transcripts, and briefs of the parties, we have determined that relief is warranted based upon errors raised in Propositions I and II.

¶ 3 In addition to instructing the jury on the charged crime of First Degree Child Abuse Murder, the trial court instructed on the lesser offense of Second Degree Felony Murder with Child Neglect as the underlying felony. Appellant was convicted of this lesser offense. In her first proposition, Appellant argues that this conviction cannot stand because under the merger doctrine the underlying felony merges into the murder charge unless the underlying felony is separate from the act which caused the death. As Appellant correctly notes, the merger doctrine has been applied in Oklahoma for many years. It was first mentioned in the 1896 case of *Jewell v. Territory*, 4 Okla. 53, 43 P. 1075 (Okla.Terr.1896) and has been a part of Oklahoma's jurisprudence ever since.[1]

¶ 4 The State responds that in light of the legislative intent evinced by the plain language of 21 O.S.2001, § 701.8(2)[2], this Court's application of the merger doctrine is unfounded and should be discontinued. As the State correctly notes, the merger doctrine is not based upon statutory language. Rather, it derived from the policy considerations first fully discussed in *Tarter v. State*, 1961 OK CR 18, ¶¶ 40–44, 359 P.2d 596, 602, which are simply that without the merger doctrine, any person who commits a felony, other than one enumerated for First Degree Felony Murder, from which a death that is not excusable or justified results, can be prosecuted for Second Degree Felony Murder. Although the State argues that such

1. See, e.g., *State v. McCann*, 1995 OK CR 70, 907 P.2d 239; *Schultz v. State*, 1988 OK CR 17, 749 P.2d 559; *Tucker v. State*, 1984 OK CR 36, 675 P.2d 459; *Sullinger v. State*, 1984 OK CR 44, 675 P.2d 472; *Massie v. State*, 1976 OK CR 174, 553 P.2d 186; *Tarter v. State*, 1961 OK CR 18, 359 P.2d 596.

2. Title 21 O.S.2001, § 701.8(2) provides that homicide is Second Degree Murder when it is "perpetrated by a person engaged in the commission of any felony other than the unlawful acts set out in Section 1, subsection B, of this act."

concerns are no longer viable, we find this argument unpersuasive. We further disagree with the State's argument that the merger doctrine is contra to clear legislative intent. The fact that this Court has recognized the merger doctrine for over one hundred years without legislative intervention lends credibility to the conclusion that this Court's application of the merger doctrine is not at odds with legislative intent.

¶ 5 Having reaffirmed that the merger doctrine continues to be a part of Oklahoma's jurisprudence, we now discuss its application in the case at bar. Under the facts of this case,[3] it is clear that the felony charge upon which Appellant's Second Degree Felony Murder conviction is predicated, Child Neglect, was not separate from the act which caused the death. Therefore, we find that the underlying felony merged into the homicide and could not be used to sustain the Second Degree Felony Murder conviction. This error requires that Appellant's conviction for Second Degree Felony Murder be reversed. In finding the Appellant guilty of Second Degree Felony Murder the jury necessarily found the evidence sufficient to prove the felony of Child Neglect beyond a reasonable doubt. Therefore, we modify Appellant's sentence to this lesser crime and modify the sentence to fifteen years imprisonment.

■ ¶ 6 With regard to Proposition II, we find that the jury was improperly instructed that the range of punishment for Unlawful Removal of the Dead, After Former Conviction of Two or More Felonies, was not less than twenty years imprisonment.[4] The actual range of punishment for this crime is from four years to life imprisonment. *See* 21 O.S.2001, § 1161(D); 21 O.S. 2001, § 51.1(C). Failure to properly instruct

on the range of punishment was plain error warranting relief. *Taylor v. State*, 2002 OK CR 13, ¶ 4, 45 P.3d 103, 105. Based upon the facts of this case, we find that the appropriate remedy is to modify Appellant's sentence on Count II to ten years imprisonment.

■ ¶ 7 We find in Proposition III that the prosecutor did not abuse her discretion in filing the charges in Count II as there was probable cause to believe that the Appellant committed the crime charged and as the Appellant has not shown that the prosecution was based upon impermissible discriminatory grounds. *See Woodward v. Morrissey*, 1999 OK CR 43, ¶¶ 9 & 17, 991 P.2d 1042, 1045 & 1047.

¶ 8 In Proposition IV we find that the trial court's comments did not constitute an abandonment of the judge's role of impartiality or improperly invade the province of the jury. Nor did the comments at issue misstate the law. Thus, we find no abuse of discretion here. *Williams v. State*, 2001 OK CR 9, ¶ 15, 22 P.3d 702, 710. Further, trial counsel's failure to object to the comments at issue does not warrant a finding of ineffectiveness under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ ¶ 9 We find with regard to allegations of prosecutorial misconduct raised in Proposition V that the majority of the comments at issue were proper given the wide latitude afforded counsel to discuss the evidence and the reasonable inferences drawn therefrom. *Hogan v. State*, 2006 OK CR 19, ¶ 91, 139 P.3d 907, 936. Of those that tested the bounds of propriety, none were so egregious as to have deprived Appellant of a fair trial or sentencing. *Id.*

---

3. Appellant, an admitted drug addict, gave birth to a baby boy on the evening of April 17, 2002, at the home of an acquaintance. After the delivery, Appellant took the baby home. She opted not to go to the hospital since she believed the baby to be healthy and because she had used crack cocaine earlier in the day and was concerned that if drug use was detected the Department of Human Services would take the baby away from her. Later that night it was noted that the baby looked pale and his breathing seemed shallow. When Appellant changed his diaper she noted that there was blood in it. She called her grand-

mother for advice and then tied some string tightly around the baby's umbilical cord stump. Appellant lay down with the baby to rest. When she awoke she found that the baby was not breathing. At trial evidence was presented that the baby most likely bled to death through his umbilical cord. The cause of death was listed as loss of blood due to lack of medical care.

4. The State conceded this error in its brief on appeal.

¶ 10 It is not necessary to address Appellant's argument in Propositions VI and VII that the sentences imposed on Counts I and II were excessive and that cumulative trial error requires relief as we modified her Judgment and Sentence on Count I and modified the sentence on Count II based upon errors raised in Propositions I and II.

## DECISION

Appellant's Judgment and Sentence on Count I is **MODIFIED** to reflect a conviction for Child Neglect and a sentence of fifteen years imprisonment. Her Judgment on Count II is **AFFIRMED** and her sentence **MODIFIED** to ten years imprisonment. The sentences on Counts I and II are ordered to run concurrently. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

CHAPEL, A. JOHNSON, and LEWIS, JJ.: concur.

LUMPKIN, P.J.: concurs in part/dissents in part.

LUMPKIN, Presiding Judge: concur in part/dissent in part.

¶ 1 I dissent to the modification of the conviction in Count I to Child Neglect. I concur in the affirmance of the conviction and the modification of the sentence in Count II.

¶ 2 The majority has correctly stated that the "merger doctrine" relied upon to reverse the second-degree felony murder conviction in Count I is based upon policy considerations and not the plain language of the statute. However, I find these policy considerations are not supported by legislative intent, together with the fact the antiquated basis for those old policies is no longer pres-

ent,[1] and therefore should not be reaffirmed and applied in the present case.

¶ 3 In 1896, at the time *Jewell v. Territory* was decided, the statutory felony murder provision provided that homicide was murder "when perpetrated without design to effect death by a person engaged in the commission of a felony". 4 Okl. 53, 43 P. 1075, 1077, 1896 OK 16. However, language contained in *Jewell,* and relied upon by this Court to establish the "merger doctrine", was not contained in the statute. It is only in the syllabus to *Jewell,* in reference to felony murder, the Court stated:

> Homicide is murder, under the third subdivision, "when perpetrated without any design to effect death, by a person engaged in the commission of any felony"; **and this means some felony as defined by statute other than that of the killing itself.**

4 Okl. 53, 43 P. 1075, 1896 OK 16. (emphasis added)

¶ 4 In the *Jewell* opinion, the Court did not discuss, nor analyze the third subsection concerning felony murder, and the issue of felony murder played no part in the resolution of the case. The source of the language added to the statutory felony murder provision, and the language relied upon by this Court for years, is not clearly discernable from the opinion. The syllabus language, as emphasized above, was nothing more than a judicial attempt to legislate an amendment to a statute passed by the Legislature.

¶ 5 A possible source for the additional language appears in the next case which addressed the "merger doctrine", *Tarter v. State,* 1961 OK CR 18, ¶¶ 41–44, 359 P.2d 596, 601. In that case, the defendant was convicted of murder in the shooting death of an acquaintance. On appeal, the defendant argued the jury should have been instructed on first-degree manslaughter. The State ar-

---

1. *See Perkins on Criminal Law* (2d Ed.) P.554. "Under English common law the procedure for the trial of a misdemeanor was so different from that for the trial of a felony as to preclude a joinder of the two in the same indictment. And the rule developed that if the same act resulted in both a misdemeanor and a felony the former was merged in the latter." But the doctrine did not apply where both of the crimes were felonies. *Perkins* goes further and states "probably there was never any sound basis for the doctrine of merger of offenses,—if absolute merger is meant." Pg. 556. The doctrine developed purely on the particularities of the English common law at that time.

gued the failure to instruct on manslaughter was harmless because the crime the defendant committed was still murder, as it was perpetrated during the commission of a felony. The Court found, based on the above quoted language from *Jewell*, that the defendant could not have been convicted of felony murder. 1961 OK CR 18, ¶¶ 41–44, 359 P.2d at 601.

¶ 6 Citing language in case law from Kansas and New York, the Court expressed concern that allowing a conviction for felony murder under the circumstances of the case would mean that every intentional killing by means of a dangerous weapon would constitute first-degree murder. And, this reveals the crux of the reason for this "policy decision", i.e. a way to limit the application of first-degree felony-murder when the Legislature had failed to do so. In the New York case, *People v. Wagner*, 245 N.Y. 143, 156 N.E. 644, 646, we get our first glimpse of the possible source for the language the Court added to the statute in *Jewell*. In *Wagner*, as quoted in *Tarter*, the defendant was charged with killing the victim during a felonious assault. The *Wagner* Court stated in part; "[t]he law is clear, however, that the precedent felony must constitute an independent crime not included within the resulting homicide". While this Court acknowledged the Oklahoma statute on homicide was "copied almost verbatim" from the New York statute, the Court did not analyze the statutory language or explain its reliance on what appears to be language the Legislature elected not to include in the Oklahoma statute. *Tarter*, 1961 OK CR 18, at ¶¶ 43–44, 359 P.2d at 601–602.

¶ 7 Words not found in the text of a criminal statute should not be read into it for the purpose of extending it or giving it an interpretation in conformity with a supposed policy. *State v. Humphrey*, 1980 OK CR 86, ¶ 7, 620 P.2d 408, 409.[2] The fact the Legislature

has not intervened in this Court's repeated reliance on language the Legislature had not included in our state statute does not render our application of the law consistent with legislative intent. The "merger doctrine" or merger of offenses has more often been encountered in a double jeopardy analysis rather than in the manner applied in the present case. Convictions for a separately charged felony and felony murder with the separately charged felony serving as the underlying predicate felony have been found to violate double jeopardy principles as the proof of the separately charged felony merges with the proof of the felony underlying the felony murder charge. *See Munson v. State*, 1988 OK CR 124, ¶ 28, 758 P.2d 324, 332–333; *Castro v. State*, 1987 OK CR 182, ¶ 32, 745 P.2d 394, 405, (both cases citing *Harris v. Oklahoma*, 433 U.S. 682, 683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977)). A plain reading and literal application of 21 O.S.2001, § 701.8(2) does not raise any double jeopardy concerns. In the present case, Appellant was convicted of only one crime, second-degree felony murder based on the predicate felony of child neglect. Therefore, double jeopardy is not an issue, and the merger doctrine is not applicable to the current statute.

¶ 8 The offense of second-degree felony murder is set forth in 21 O.S.2001, § 701.8(2) which provides that second-degree murder is homicide:

2. When perpetrated by a person engaged in the commission of any felony other than the unlawful acts set out in Section 1, subsection B, of this act.

¶ 9 Under Section 1, subsection B, (21 O.S.2001, § 701.7(B)) first-degree felony murder is committed when a death results during the commission of certain enumerated felonies. Child Neglect is not one of the enumerated felonies.[3] Construing the plain

---

**2.** In *State v. Jones*, 1993 OK CR 36, ¶ 7, 859 P.2d 514, 515, this Court found the plain and "express language" of 21 O.S.1991, § 701.8(2) ("[H]omicide is murder in the second degree in the following cases: ... 2. When perpetrated by a person engaged in the commission of any felony other than the unlawful acts set out in Section 1, subsection B, of this act.") precluded prosecutions where the victim was killed by someone

other than the defendant or an accomplice. "Any other interpretation of these statutes would do violence to the clear statutory language". *Id.*

**3.** However, when the death of a child results from child abuse it constitutes the crime of First Degree Murder pursuant to 21 O.S.2001, § 701.7(C).

language of § 701.8(2) means "any felony", except the felonies enumerated in § 701.7(B), can form the basis for a second-degree felony murder charge. The Oklahoma Legislature has clearly enunciated its intent and set out the criteria for both first and second-degree felony murder. To interpret otherwise would in effect obviate the statutory language as no one could ever be charged with second-degree felony murder.[4] The Court's interpretation also brings to question the validity of any felony murder statute and maybe the misdemeanor manslaughter statute.

¶ 10 It is within the powers of the legislature to define crimes. *Salyers v. State*, 1988 OK CR 88, ¶ 7, 755 P.2d 97, 100. "The felony murder statute is intended to prevent certain felonies as well as homicide, and the Legislature, in its wisdom, determined that there are certain felonies in which homicide is most likely to occur." *James v. State*, 1981 OK CR 145, ¶ 13, 637 P.2d 862, 865. Section 701.8(2) is recognition by the Legislature that a homicide can occur during the commission of felonies other than those specifically enumerated under the first-degree felony murder statute and under circumstances not warranting a first-degree murder charge. By including the language of "any felony" in § 701.8(2), and identifying those felonies by reference to § 701.7(B), the Legislature impliedly did away with the "merger doctrine" relied upon in this case.

¶ 11 Further, a finding that the underlying felony of child neglect somehow merges with the homicide in this case to preclude a conviction for second-degree felony murder is also inconsistent with the central purpose of the felony murder doctrine. In *Wade v. State*, 1978 OK CR 77, ¶ 3, 581 P.2d 914, 915–916, this Court stated:

> The primary function of the Felony–Murder Doctrine is to relieve the prosecution of the necessity of proving actual malice or premeditated intent on the part of the defendant in the commission of the homicide; in other words, under the Felony–Murder Doctrine, the malice or premeditated intent involved in the perpetration or attempted perpetration of the felony is "transferred" or "imputed" to the commission of the homicide so that the accused can be found guilty of murder even though the killing is unintentional.

*Id.*

¶ 12 In the present case, the State's theory of first-degree child abuse murder was not supported by the evidence, and the jury so found. However, the evidence did support a finding that the victim's death was the result of Appellant's willful neglect of her baby's medical needs, which constitutes the offense of child neglect. *See Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–204 (reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt). Even though the killing may

---

4. Further, the concerns expressed in *Tartar* that every murder could be charged as first-degree murder without the necessity of proving the requisite intent to kill are no longer present under the current statutory scheme. First-degree felony murder is now limited to a handful of enumerated felonies. 21 O.S.2001, § 701.7(B). Thus, the English common law policy decisions to escape the onerous penalties imposed on felony convictions are no longer viable.

In addition, a plain reading and literal application of § 701.8(2) also will not subsume other forms of homicide. In addition to second-degree felony murder, a homicide is second-degree murder when committed by an act which is imminently dangerous to another person and evincing a depraved mind, but without any premeditated design to affect the death of any individual. 21 O.S.2001, § 701.8(1). Homicide is first-degree manslaughter when a killing is committed: 1) during the commission of a misdemeanor; 2) in the heat of passion; or 3) in an unnecessary attempt to prevent the person killed from committing a crime. 21 O.S.2001, § 711. Construing the second-degree murder statute together with the first-degree manslaughter statute, it is clear the Legislature intended for any felony, as defined by statute, to serve as the basis for a second-degree felony murder conviction unless the defendant was acting while in the heat of passion or in an unnecessary attempt to resist a crime. Further, second degree manslaughter is committed by a person who acts negligently, but does not commit a felony. 21 O.S.2001, § 716. Therefore, applying § 701.8 to any felony, not listed in § 701.7(B), does not subsume second-degree manslaughter. Regardless, if a true merger doctrine were being applied it would mean the lesser offense is merged into the greater offense and not vice versa.

have been unintentional, Appellant is criminally responsible for the murder as the intent involved in the willful neglect of the baby's medical needs is transferred to the commission of the homicide. In effect, this neglect was an indirect cause of the death and even under *Tarter* and *Jewell* should be the basis for the predicate felony. To interpret the statute otherwise would mean no person could ever be charged with the statutory crime set out in § 701.8(2).

¶ 13 Appellant's failure to seek medical attention for her son, which was inherently and potentially dangerous to her son's life in light of the facts and circumstances surrounding both the predicate felony and the homicide, brings this case within the historical definition of second degree felony murder. *See Wade,* 1978 OK CR 77, at ¶ 3–5, 581 P.2d at 916. *See also Malaske v. State,* 2004 OK CR 18, ¶ 4, 89 P.3d 1116, 1117; *Franks v. State,* 1981 OK CR 138, ¶ 7, 636 P.2d 361, 364. Considering the underlying purpose of felony murder, finding criminal liability for the baby's murder based upon Appellant's willful failure to seek medical attention (commission of the felony of child neglect) is an appropriate application of the second-degree felony murder statute.

¶ 14 This Court should recognize the vestiges of the English Common Law are no longer present in our statutory scheme. Crimes have been clearly spelled out by the Oklahoma Legislature and the days of creating "sleight of hand" policy labels to escape the draconian application of antiquated sentencing policies in that early English system

are no longer present.[5] If we are to adhere to the Rule of Law, then we should apply the law as written and not devise schemes to subvert that law. A result oriented jurisprudence will always create problems of explaining legally the anomalies that preclude the orderly progression of the law. As the analysis of Oklahoma case law reveals, those early decisions were flawed through disregarding the language of the Oklahoma statute and amending that statute by adding language specifically omitted by the Legislature. The Court should recognize this flaw, step into the 21st Century, and uphold the statutory scheme devised by the Oklahoma Legislature for dealing with the various levels of criminal conduct. I would affirm the judgment and sentence in Count I.

LEWIS, J., concurring in part and dissenting part.

¶ 1 I concur in affirming the conviction in Count II, but dissent from the Court's resolution of Count I. The killing of one human being by another is homicide, either criminal, excusable, or justifiable. 21 O.S.2001, §§ 691, 692. From the facts related in 3 of the opinion, Appellant's failure to obtain medical care for her child was neither excusable nor justifiable. When this omission tragically resulted in death, it was either murder or manslaughter.[1] The jury convicted Appellant of the lesser included offense of second-degree felony murder, which required a finding that she caused her child's death in the commission of willful or malicious neglect, here taking the form of a failure to

---

5. W. LaFave and A. Scott, *Substantive Criminal Law,* Vol. 2, Pg. 207 (1986), "At the time the felony-murder rule developed, all felonies were punishable by death, so it made little difference whether the felon was hanged for the felony or the murder". Ultimately, "In England the courts came to limit the felony-murder doctrine in one of two ways: (1) by requiring that the defendant's conduct in committing the felony involve an act of violence in carrying out a felony of violence, or (2) by requiring that the death be the natural and probable consequence of the defendant's conduct in committing the felony." *Id.* So, this decision does not even comply with the rule ultimately established under the English Common Law. And, this death was definitely "the natural and probable consequence of the defendant's conduct in committing the felony".

1. *See* 21 O.S.2001, § 701.8(1) and (2) (defining second-degree murder as killing "by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design" to effect death, or in the commission of any felony not enumerated as first-degree felony murder); § 711(1) (defining first-degree manslaughter as homicide "perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor"); and § 716 (defining every "killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide," as manslaughter in the second degree).

obtain medical care. 10 O.S.2001, §§ 7102(B)(3), 7115(C).

¶2 The Court reads our cases on the merger doctrine to preclude Appellant's conviction for second-degree felony murder based on the predicate felony of child neglect. This "independent crime" requirement, sometimes called the merger doctrine, prevents the State from transforming every aggravated assault resulting in death, and every lesser degree of homicide, into second-degree felony murder. Without the merger doctrine, one who killed another in the commission of an aggravated assault or first- or second-degree manslaughter would be guilty of second-degree felony murder. This defeats the legislative prerogative to define the varying degrees of homicide; it is the primary mischief prevented by the merger doctrine.[2]

¶3 The Legislature clearly authorized a conviction for second-degree murder in a case like this, where a homicide is "perpetrated by a person engaged in the commission of *any felony* other than the unlawful acts set out in Section 1, subsection B, of this act." 21 O.S.2001, § 701.8(2) (emphasis added). Notwithstanding this apparently sweeping legislative policy to punish more severely all homicides caused while in the commission of a felony, our jurisprudence also "requires a nexus between the underlying felony and the victim's death in order for the felony murder doctrine to be applicable." *Malaske v. State*, 2004 OK CR 18, ¶5, 89 P.3d 1116, 1118. We have said that any predicate felony "must be inherently or potentially dangerous to human life, inherently dangerous as determined by the elements of the offense or potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide." *Id., quoting Wade v. State*, 1978 OK CR 77, ¶4, 581 P.2d 914, 916.

¶4 Despite the narrow purpose to which the merger rule is directed, the Court's decisions in this area now poise it to void a felony murder conviction whenever there is either too much criminal nexus or not enough: too little relationship between the felony and the killing and liability will not attach; too direct a relationship and the lesser and greater offenses "merge" to the same effect. To these judicial complications of a seemingly straightforward legislative policy, today's opinion adds a *non-sequitur:* the lesser predicate crime first merges with the more serious act of killing and then (astonishingly) *re-emerges* to serve as the offense of conviction. The criminal homicide into which this lesser crime merged is then set at naught; its prosecution is abated forever. Previous findings of a merger violation resulted in reversal and remand for a new trial on a proper homicide charge. E.g., *Massie v. State*, 1976 OK CR 174, 553 P.2d 186; *Tucker v. State*, 1984 OK CR 36, 675 P.2d 459, *overruled on other grounds, Schultz v. State*, 1988 OK CR 17, ¶6, 749 P.2d 559, 561; *Sullinger v. State*, 1984 OK CR 44, 675 P.2d 472. The remedy imposed here is unprecedented.

¶5 The Court's expansive application of the merger doctrine to void this felony murder conviction predicated on child neglect also raises the troubling question of whether Appellant and others similarly situated could even be answerable to a charge of first-degree manslaughter. Section 711(1) provides that a homicide is first-degree manslaughter when "perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor." Does the majority's broad conception of merger preclude a misdemeanor-manslaughter conviction predicated on a violation of 21 O.S.2001, § 852, which prohibits the willful omission of a responsible party to furnish necessary food, clothing, shelter, or *medical assistance* to a child?

¶6 In *Funkhouser v. State*, 1988 OK CR 109, 763 P.2d 695 this Court affirmed a conviction for second-degree manslaughter involving a failure to seek medical care for a

---

**2.** "... [A]t common law, homicide resulting from an assault committed with intent to inflict serious bodily harm was classified as murder. Consequently there was no confusion between degrees of murder if the same act were punishable as felony-murder as well. But with the advent of the codified degrees of homicide it became necessary to devise methods of preserving the distinctions between those degrees." Note, *The Doctrine of Merger in Felony–Murder and Misdemeanor–Manslaugher*, 35 St. John's L.Rev. 109, 117 (1960), *quoted in People v. Payton*, 356 Ill.App.3d 674, 292 Ill.Dec. 575, 826 N.E.2d 1011 (2005).

sick child. The Court reasoned that the parents' omission showed culpable negligence warranting a conviction under section 716. *Id.* at ¶ 14, 763 P.2d at 697. Appellant is at minimum answerable to a charge of second-degree manslaughter on remand. The Court avoids that option and its maximum sentence of four (4) years imprisonment in favor of imposing a more severe punishment for felony child neglect, tacitly acknowledging the seriousness of Appellant's crime while extending her substantial mercy. Today's opinion immunizes Appellant from a murder conviction authorized by the plain language of section 701.8 and returned by the verdict of a jury.