## COURT OF APPEALS,

### November, 1912

## THE PEOPLE v. LAWRENCE SPOHR.

(206 N. Y. 516.)

(1.) MURDER—ERRONEOUS CHARGE AS TO WHETHER DEFENDANT WAS EN-
GAGED IN ANOTHER FELONY AT THE TIME OF THE MURDER FOR WHICH
HE WAS INDICTED.*

Defendant found a woman with whom he was intimate lying on
the bed in a room at the home of her sister and a man sitting on the
bed beside her. Defendant fired a bullet from his revolver and hit
the man who escaped from the room and then fired three shots at
and killed the woman. On the trial for the homicide the court
charged that if at the time the woman was killed defendant was en-
gaged in committing or attempting to commit either an assault in
the first degree or an assault in the second degree upon the man, and,
if the shooting of the woman occurred at the same time and as part of
the same transaction, the defendant committed the crime of murder
in the first degree even though he may not have intended to kill either.
*Held*, that the court should not have submitted to the jury the ques-
tion as to whether the defendant at the time of the killing was en-
gaged in the commission of a felony and that the charge as made
upon that subject was erroneous. (Penal Law, §§ 240, 1044, 1046;
People v. Hutter, 184 N. Y. 237-244, followed.)

(2.) SAME.

While it is too late to take an exception to the charge by the court
after the jury has rendered its verdict, where the defendant on a trial
for murder has been deprived of a substantial right by error therein,
the judgment will be reversed.

APPEAL from a judgment of the Supreme Court, rendered
May 24, 1911, at a Trial Term of the county of Westchester,
upon a verdict convicting the defendant of the crime of murder
in the first degree.

The facts, so far as material, are stated in the opinion.

---

* See note 24-291.

*Charles H. Noxon,* for appellant.

The court committed reversible error in charging the jury. (People v. Huter, 184 N. Y. 237; People v. Sullivan, 173 N. Y. 122.)

*Francis A. Winslow,* District Attorney (*Lee Parsons Davis,* of counsel), for respondent.

The evidence warranted the jury in finding that the deceased was killed while the defendant was engaged in the commission of a felony.    (People v. Sullivan, 173 N. Y. 122; People v. Miles, 143 N. Y. 383.)

HAIGHT, J.:

On the 1st day of April, 1911, the defendant with a loaded revolver shot and killed one Rose O'Toole, a servant girl, at the home of her sister, Mary Campbell, in the village of White Plains.    The defendant was a musician, enlisted in the United States army, and attached to the band at Fort Slocum.    He was forty-five years of age and had been previously married in March, 1885.    The evidence tends to show that he commenced keeping the company of Rose O'Toole in January, 1911; that they became intimate and were often together until March following, at which time she refused to receive further attention from him or to see him when he called.    On the night of the homicide he entered the apartments of Mr. and Mrs. Campbell during their absence, walked through the kitchen to the bedroom door and there discovered Rose lying upon the bed and a man by the name of Arthur C. Woodin sitting on the bed beside her. Thereupon the defendant drew his revolver from his pocket, asked Woodin what his name was and then fired.    According to Woodin's testimony the bullet entered his chin, passed through the jaw into the throat with such force as to knock him

over against the bed, and as he arose he coughed the bullet out from his throat and then ran down stairs on to the street; that as he reached the bottom of the stairs he heard three more shots fired. When medical assistance arrived it was found that Rose had received one bullet in the temple, another penetrating the side of the nose and a third passed into her chest. The defendant, in a letter to his commanding officer at Fort Slocum, stated that he shot the man intentionally but the woman accidentally. In his own testimony upon the trial he remembered that he said to the man seated upon the bed, "hello, what's your name," and at the same time he remembers the firing of one shot. He, however, did not remember anything more that took place until after he was out of the house upon the street. But in his confession to the policeman it apears that as he asked the man sitting upon the bed his name, he pulled his gun and fired, and that the man jumped up and ran out; that Rose then pulled the bedclothes over her head and arms and as he fired again she screamed at the first shot and after that was still; that he fired several more times, but how many he did not know. There was other testimony tending to show threats of violence on the part of the defendant during the time that Rose was hiding from him and refusing to see him. The evidence is quite voluminous, but attention has been called to that which we deem now necessary for the purposes of this review.

The district attorney in summing up the People's case called the attention of the jury to the evidence tending to show deliberation and premeditation, claiming that the defendant was guilty under that charge of the indictment. He then proceeded to argue the question as to whether the defendant was guilty of murder in the first degree upon the ground that he was committing a felony at the time that he shot Rose. He proceeds, "Here is the proposition: If he killed Rose O'Toole while he was committing an assault, a felony, upon Arthur C. Woodin, he is just as guilty of murder in the first degree as though he

deliberately and with premeditation shot Rose O'Toole. * * *
The proposition is, did he commit an assault on Arthur C.
Woodin? Woodin is lucky to be alive. You see the assault we
must prove on Woodin is assault in the first degree or second
degree. Take it with a deadly weapon, a weapon likely to pro-
duce grievous bodily harm, that is a deadly weapon. You
have no reasonable doubt he was assaulted with a deadly
weapon? You cannot say a 38 revolver is not a deadly weapon.
You have no doubt, in fact he did commit an assault with a
deadly weapon likely to produce grievous bodily harm upon
Woodin. He did suffer grievous bodily harm. He got him
so he couldn't talk, with a bullet down in his throat. There is
a felony isn't it? Then we have it practically conceded here
that he committed upon Arthur C. Woodin a felony, and not
only that, but here is his letter to that effect, * * * 'The
woman in this case was shot accidentally, the man intentionally.'
There is his writing gentlemen. 'The woman in this case was
shot accidentally, the man intentionally.' If he intentionally,
being in the exercise of his mental powers, shot Woodin and
committed assault in the first or second degree upon Woodin,
then killed this woman Rose O'Toole, he has committed murder
in the first degree, and are you going to shy at the performance
of a disagreeable duty because of the punishment?"

The trial judge, in submitting the case to the jury, defined
murder in the first degree as follows: "Murder in the first de-
gree is defined by the law to be the killing of a human being
from a deliberate and premeditated design to effect the death
of the person killed, or without a design to effect death, without
intent to kill and without deliberation or premeditation, by a
person engaged in the commission of, or in an attempt to com-
mit a felony either upon or affecting the person killed, or other-
wise." He then stated: "Those are the two definitions of mur-
der in the first degree that apply to the facts of this case." He
then charged: "A felony is a crime punishable by imprison-

ment in a State's prison. An assault in the second degree is punishable by imprisonment in a State's prison, and an assault in the second degree is committed when a person inflicts grievous bodily harm upon another, either with or without a weapon. Assault in the first degree is punishable by imprisonment in a State's prison, and that crime is committed when a person assaults another with intent to kill, using a dangerous weapon. So that if this defendant, applying this law to this case, at the time that Rose O'Toole was shot and killed, was engaged in committing, or attempting to commit, either an assault in the first degree or an assault in the second degree, upon Woodin, and if the shooting of Rose O'Toole occurred at the same time, and as a part of the same transaction, then the defendant committed the crime of murder in the first degree, even though he may not have intended to kill Rose O'Toole, and even though he may not have intended to kill Arthur Woodin."

While we are of the opinion that the trial court properly submitted the question of the defendant's guilt, under the provisions of the statute which makes the killing of a human being from a deliberate and premeditated design to effect the death murder in the first degree, we entertain the view that the court should not have submitted to the jury the question as to whether the defendant at the time of the killing was engaged in the commission of a felony and that the charge as made upon that subject was erroneous. It will be recalled that the only assault committed on the occasion was, first, the shooting of Woodin, and, second, the shooting of the girl. One survived, although seriously wounded; the other died. The bullet that was fired into Woodin's throat lodged there and was coughed up. It consequently did not injure the girl. The violence that caused her death was the shots which followed, and such shots became the constituent part of the homicide and are, therefore, merged in the charge therefor. This question we had under consideration in the case of People v. Huter (184 N. Y. 237-244, 20 N. Y.

Crim. 36). After referring to the authorities upon the subject, we then stated the rule, as follows: " In order, therefore, to constitute murder in the first degree by the unintentional killing of another while engaged in the commission of a felony, we think that while the violence may constitute a part of the homicide, yet the other elements constituting the felony in which he is engaged must be so distinct from that of the homicide as not to be an ingredient of the homicide, indictable therewith or convictable thereunder." Applying the doctrine of that case to this, we have the shooting as the chief ingredient of the crime. It was the sole act of violence and was consequently indictable under the charge of homicide and convictable thereunder.

Again, murder in the first degree under subdivision 1 of section 1044 of the Penal Law (Cons. Laws, ch. 40) is the killing of a human being from a deliberate and premeditated design to effect the death of the person killed or of another. Murder in the second degree, as defined by section 1046 is, " Such killing of a human being is murder in the second degree, when committed with a design to effect the death of the person killed, or of another, but without deliberation and premeditation." Assault in the first degree is defined, as the act of a person who, with an intent to kill a human being, assaults another with a loaded firearm. (Section 240.) The ingredient of the crime is an assault with a loaded firearm with intent to kill, without the deliberation and premeditation required for murder in the first degree. Under section 1046 of the Penal Law such assault is made murder in the second degree when the assault results in the killing of the person intended, or of another; so that, as applied to the facts in this case, if the defendant assaulted Woodin with a loaded revolver, without deliberation premeditation, but with intent to kill him, and he killed Rose O'Toole instead, the offense would be murder in the second degree. And yet, under the charge of the court, the jurors were instructed

that it constituted murder in the first degree. This but demonstrates the necessity of keeping in mind that the acts constituting the felony must exist separately and independently of the acts of violence, which are the essential ingredients of and which produced the homicide.

The defendant's attorney, in trying the case, neglected to take any exception to the charge, to which we have called attention. After the trial, and the verdict had been rendered, he then requested the court to give him an exception. This was too late. He should have taken it before the jury had rendered its verdict. But we have quoted from the address of the district attorney and from the charge of the court, for the purpose of showing the importance that was given to this branch of the case. It is quite possible that the jury based its conviction upon the charge so made. If so, the defendant has been deprived of a substantial right.

The judgment and conviction should be reversed and a new trial ordered.

CULLEN, Ch. J., VANN, CHASE and COLLIN, JJ., concur; WERNER, J., not voting; GRAY, J., absent.

Judgment of conviction reversed, etc.