THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM WAGNER, Appellant.

Crimes — murder in first degree — erroneous charge that defendant might be convicted of murder in first degree if killing was effected while he was engaged in felonious assault upon victim — verdict that defendant killed while engaged in commission of felony warranted by proof that while he was engaged in felonious assault on third person deceased came to rescue and was assaulted and killed by defendant — error disregarded where both assaults were proved by same uncontradicted evidence.

1. Upon trial of an indictment for murder in the first degree it is error for the trial judge to charge that if the jury find the killing to have been effected while defendant was engaged in a felonious assault upon his victim they may find him guilty of murder in the first degree. The precedent felony must constitute an independent crime not included within the resulting homicide to warrant a conviction for murder in the first degree in the absence of proof of deliberation and premeditation.

2. The trial judge did not err, however, in charging that defendant may have killed while engaged in the commission of a felonious assault upon a third person, where it appears from undisputed evidence that while defendant was strik:. g his landlady with a blackjack the deceased came to her rescue, whereupon defendant began the assault upon him which ended in his death. The homicide had its inception and was committed when the felonious assault upon the landlady was still in progress. It follows that the jury might have found that the defendant killed the deceased while " engaged in the commission of a felony " within the meaning of subdivision 2 of section 1044 of the Penal Law.

3. Under such circumstances and where both assaults were proved by the uncontradicted evidence of the same witnesses, the error may be disregarded. The jury could not in reason have believed that

defendant was guilty of an assault upon his victim and guiltless of an assault upon the landlady. The verdict, therefore, must be regarded as a finding that defendant killed the deceased while engaged in a felonious assault upon the landlady and, therefore, the jury correctly found him guilty of murder in the first degree.

(Argued April 5, 1927; decided May 3, 1927.)

APPEAL from a judgment of the Kings County Court, rendered December 23, 1926, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Gardiner Conroy* and *Edward J. Reilly* for appellant. The jury was improperly charged as to the felonies in the case. (*People* v. *Sullivan*, 173 N. Y. 122; *People* v. *Marendi*, 213 N. Y. 600; *People* v. *Hüter*, 184 N. Y. 237; *People* v. *Spohr*, 206 N. Y. 516; *People* v. *Nichols*, 230 N. Y. 221; *People* v. *Harris*, 136 N. Y. 423; *People* v. *Giordano*, 213 N. Y. 575.)

*Charles J. Dodd,* District Attorney (*Henry J. Walsh* of counsel), for respondent. The court properly instructed the jury upon the law. (*People* v. *Sullivan*, 173 N. Y. 122; *People* v. *Smith*, 232 N. Y. 239; *People* v. *Hüter*, 184 N. Y. 237; *People* v. *Patini*, 208 N. Y. 176; *People* v. *Giblin*, 115 N. Y. 196.)

KELLOGG, J. The indictment charged the defendant with the commission of the crime of murder in the first degree in that on November 29th, 1926, he " wilfully, feloniously and with malice aforethought, shot and killed Peter Basto with a revolver." The defendant was tried, found guilty of the crime as charged, and sentenced to suffer the penalty of death. From the judgment of conviction entered upon the verdict of the jury the defendant now appeals.

The case for the prosecution was rested chiefly upon the testimony of one Lulu Saddlemire. Miss Saddlemire occupied a three-story house in the borough of Brooklyn and rented the rooms therein to various lodgers. Her

1927.]            Opinion, per KELLOGG, J.            [245 N. Y. 143]

testimony was substantially as follows: The defendant, on the evening of Saturday, the 27th of November, 1926, called at the Saddlemire house and applied to Miss Saddlemire for the lease of a room. He was shown a room on the third floor which he engaged for a week. He paid the rental demanded in advance, carried his satchel to the room and began its occupancy that evening. On the morning of the following Monday, the 29th day of November, Miss Saddlemire stationed herself in a front room upon the first floor of the house. Through the windows of this room, before nine o'clock, she observed each of her lodgers, except the defendant, leave the house. Shortly after their departure Miss Saddlemire heard footsteps overhead. They seemed to be the footfalls of a man walking back and forth between the bedrooms on the second floor and the bathroom on that floor. Suspicions of the defendant thereupon crossed her mind, for the defendant was the only lodger left in the building, and his room was upon the third floor, not upon the second. Accordingly, Miss Saddlemire mounted the stairs to the second floor. As she stepped upon the landing she observed that the bathroom door was partly open and she saw the defendant peeking at her through the opening. The door was closed suddenly, and Miss Saddlemire walked into an adjoining room. As she busied herself with room work in one of the bedrooms she again saw the bathroom door open on a crack. The defendant again peeked out, and, seeing Miss Saddlemire, again closed the door. After the lapse of about fifteen minutes, the defendant opened the door and stood facing Miss Saddlemire with his right hand behind his back. A conversation ensued between the two, during which Miss Saddlemire inquired and the defendant made answer in relation to defendant's previous place of abode and his present employment. Finally the defendant stepped forward and struck Miss Saddlemire a blow upon the head with an object wrapped in a towel. A struggle

10

between the two followed, in the course of which Miss Saddlemire several times cried out, " Papa, Papa," for her father, and " Peter " for Peter Basto.  The defendant grabbed Miss Saddlemire by the throat with one hand, while with the other hand he tried to close her mouth. Such was the position of the two when Peter Basto rushed upstairs.  When Peter Basto saw the defendant with his hand upon Miss Saddlemire's throat he struck the defendant a blow upon the head.  The defendant released Miss Saddlemire and struck back at Peter Basto. Miss Saddlemire broke away, ran down the stairs, opened the front door and began calling for help.  While stationed at the front door she heard two or three pistol shots from the floor above, and thereupon heard Peter Basto cry, " I am murdered, I am murdered." The witness, undaunted by the sound of bullets, rushed upstairs.  She saw Peter Basto and the defendant lying side by side on the floor.  She took off her shoe and with it began to beat the defendant upon the head. The defendant arose, struck Miss Saddlemire a blow on the face and made his escape, apparently through the roof.  The defendant shortly afterward was captured by the police.  Meanwhile, Peter Basto, suffering wounds from three bullets which had lodged in vital bodily parts, had come to his death.

The story told by Miss Saddlemire was confirmed by the defendant in answers made by him soon after his capture to questions put by the district attorney.  He stated that he had purchased the pistol with which he shot Peter Basto about five days before he went to room at the Saddlemire house.  He identified a " black-jack " as the instrument wrapped in a towel with which he had struck Miss Saddlemire on the head.  He said he struck her because she asked for references.  He stated; " She caught me trying to get out of the house with some clothes I robbed from the rooms up there."  He said he carried the pistol with which he shot Basto in his vest

pocket; that after his mix-up with Basto they rolled on the floor; that he was lying underneath Basto when he pulled his pistol from his vest pocket and shot Basto in the body three times. He stated that he had started, on the morning in question, to steal clothes from the various lodgers in the house; that the doors of the rooms were unlocked; that all he had to do in order to enter was to turn the knobs of the doors; that he put the things he stole in two bags; that he kept the bags in the bath-room; that he could not make a get-away with his loot because of Miss Saddlemire's interference. He identified the things which he stole. Among them were two suits of clothes. The owner of one of these suits testified that he had paid sixty dollars for the suit and had used it only twelve times. The owner of the other suit testified that it had cost him thirty dollars. There were, also, among the articles stolen, a photographic camera, and dental bridge-work belonging to a roomer.

The defendant does not now contend that the evidence was insufficient to support the verdict. His plea for a reversal is grounded solely upon certain alleged errors in the charge of the trial judge to the jury. The judge charged that the jury might find the defendant guilty of murder in the first degree in that the killing by him of Peter Basto was committed " from a deliberate and premeditated design to effect " his death, within subdivision 1 of section 1044 of the Penal Law, or that the defendant committed the crime named in that " without a design to effect death " he killed Peter Basto while " engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise," within subdivision two of that section. He further instructed the jury that they might find that the killing was effected while the defendant was engaged in the commission of any one of three different felonies, to wit, the felony of (1) burglary, (2) grand larceny, and (3) assault in the second degree. He further stated that the

jury might find that the defendant was engaged at the time of the killing in a felonious assault either upon Miss Saddlemire or upon Peter Basto. The defendant finds no fault with the charge in so far as the jury were instructed that they might find him guilty of a deliberate and premeditated killing; nor in so far as they were instructed that they might find that the killing was effected while he was engaged in the commission of the felony of burglary or the felony of grand larceny. His complaint is with that portion of the charge whereby the jury were instructed that they might find the defendant guilty of murder in the first degree in that he killed Peter Basto while engaged either in a felonious assault upon Lulu Saddlemire or in a felonious assault upon Peter Basto.

We think it self-evident that the trial judge committed error when he charged that the killing of Peter Basto may have been effected while the defendant was engaged in a felonious assault upon him, and, basing their conclusion thereupon, might determine that the defendant was guilty of murder in the first degree. If this were not error, then every intentional killing, by means of a dangerous weapon, regardless of deliberation and premeditation, would constitute the crime of murder in the first degree, since every such killing must be preceded by the direction of such a weapon against the body of the person killed, which in itself would constitute a felonious assault. The law is clear, however, that the precedent felony must constitute an independent crime not included within the resulting homicide. (*People* v. *Hüter*, 184 N. Y. 237; *People* v. *Spohr*, 206 N. Y. 516.) In the *Hüter* case it was said: " In order, therefore, to constitute murder in the first degree by the unintentional killing of another while engaged in the commission of a felony, we think that while the violence may constitute a part of the homicide, yet the other elements constituting the felony in which he is engaged must be so distinct from that of the homicide

as not to be an ingredient of the homicide, indictable therewith or convictable thereunder." Again it was said: " It is apparent, therefore, that the gist of the offense is the assault, and when it is by violence inflicting an injury to the person so assaulted, resulting in death, the act becomes a constituent part of the homicide and is merged in the charge therefor." Clearly, in the case at bar, the original assault upon Peter Basto was an ingredient of the resulting homicide " indictable therewith or convictable thereunder." The charge, in respect to the assault upon Peter Basto, therefore, was palpably erroneous.

It is equally self-evident that the trial judge did not err in charging that the defendant may have killed Peter Basto while engaged in the commission of a felonious assault upon Lulu Saddlemire. One is guilty of the felony of assault in the second degree who " wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm." (Penal Law, § 242.) A " black-jack " is such an instrument or thing. (*People* v. *Persce*, 204 N. Y. 397.) That the defendant " wilfully and wrongfully " assaulted Miss Saddlemire by striking her upon the head with a black-jack was established by undisputed proof. That assault continued and was in full swing when Peter Basto came up the stairs. The defendant then had his hand upon the throat of Miss Saddlemire. He released his hold only when Peter Basto struck him a blow. At that moment the defendant began the assault upon Peter Basto which ended in the latter's death. Thus the fatal assault began at a moment when the assault upon Lulu Saddlemire was in progress. If it be true, as we have held it to be, that the original assault was an ingredient of the subsequent killing, was included therein and comprehended thereby, then for the very reason that the felonious assault upon Peter Basto was not a crime precedent to a homicide committed upon him, it must

[245 N. Y. 143]          Opinion, per KELLOGG, J.                    [May,

be held that the homicide had its inception, and was committed, when the felonious assault upon Lulu Saddlemire was still in progress. That was an independent felony. (*People* v. *Patini*, 208 N. Y. 176.) It follows that the jury might have found that the defendant killed Peter Basto while " engaged in the commission of a felony " within the meaning of subdivision 2 of section 1044 of the Penal Law.

The question arises whether we may disregard the error of the trial judge in charging the jury that they might find the defendant guilty of murder in the first degree and base their finding upon the proof that the defendant was engaged in a felonious assault upon Peter Basto when the killing was effected. Section 542 of the Code of Criminal Procedure requires us to give judgment " without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." It is conceivable that the jury may have thought that the defendant was not engaged in the commission of the crime of burglary at the time of the killing. That crime was committed provided only that the doors of the rooms, which the defendant entered, were latched at the time and that the defendant unlatched them in order to enter. Upon that question the only proof lay in the confession of the defendant. At one time he stated that the doors were open. At another time he said that he turned the knobs of the doors and entered. Thus the jury may have thought that burglary was not clearly established. Again the jury may have thought that the crime of grand larceny was not proven. The articles stolen by the defendant may well have seemed to them to be of a less value than fifty dollars. Moreover, the jury may have thought that premeditation and deliberation may not have been sufficiently established. These assumptions are well within range; they are not merely possible; they are not at all improbable. If they are correct, it must follow that the jury based their

verdict of murder in the first degree either, correctly, upon the proof that the defendant was engaged in a felonious assault upon Lulu Saddlemire when he killed Peter Basto, or, incorrectly, upon the theory that he was at the time engaged in a precedent felonious assault upon the man slain. Is it possible that the jury believed the latter to have been true and not the former; that there was an assault upon Peter Basto and not an assault upon Lulu Saddlemire? Lulu Saddlemire gave the only testimony offered in relation to either assault. The confession of the defendant confirmed her statement in every particular. No witness was sworn by the defendant and no evidence was given to contradict the evidence thus given and the confession made. According to both, the attack upon Peter Basto immediately followed the attack upon Lulu Saddlemire. The two assaults were inseparably connected according to the word of both Miss Saddlemire and the defendant. If the jury believed there was an assault upon Peter Basto and not upon Lulu Saddlemire they must have thought that, in respect to the former, Miss Saddlemire was a perjurer and the defendant a gratuitous liar; they must then have proceeded to rest their conclusion, as to the latter, upon the testimony of the self-same truthless witnesses. We are not, in order to accord the defendant his full rights, obliged to make the assumption that the jury box was filled with men totally devoid of reasoning power and solely lacking in common sense. In *People* v. *Swersky* (216 N. Y. 471, at p. 481) this court, in treating of its power to disregard error in a case of a kindred nature, said: " Some cases have said that the error must be one which by no possibility could have affected the result. By this, however, is not meant a strict or literal possibility. We are to consider what may in reason be expected from reasonable men." Reasonable men upon the jury, in this case, could not in reason have believed that the defendant was guilty of an assault upon Peter Basto, and guiltless of an assault upon

Lulu Saddlemire. We conclude that their verdict must in reason be regarded as a finding that the defendant killed Peter Basto while engaged in the commission of a felonious assault upon Lulu Saddlemire. In that event, although incorrectly advised by the trial judge, they correctly found the defendant guilty of the crime of murder in the first degree. The error was, therefore, harmless and should be disregarded.

The judgment of conviction should be affirmed.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Judgment affirmed.