2011 OK CR 28

**Eric Jose BARNETT, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–2009–698.**

Court of Criminal Appeals of Oklahoma.

Nov. 1, 2011.

James Dennis, Sapulpa, OK, attorney for defendant at trial.

O.R. Barris, III, Asst. District Attorney, Okmulgee, OK, attorney for The State at trial.

Lee Ann Jones Peters, Okla. Indigent Defense System, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General, Lori S. Carter, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

LEWIS, Vice–Presiding Judge.

¶ 1 Eric Jose Barnett, Appellant, was tried by jury and found guilty of second degree felony murder, in violation of 21 O.S.2001, § 701.8(2), in the District Court of Okmulgee County, Case No. CF–2009–2.[1] The jury sentenced Appellant to twenty-three (23) years imprisonment. The Honorable H. Michael Claver, District Judge, pronounced judgment and sentence accordingly.[2] Mr. Barnett appeals the following propositions of error:

1. The trial court's refusal to instruct the jury on Appellant's theory of defense deprived him of his rights to a fair trial and to the due process of law, in violation of the Sixth and Fourteenth Amendments of the Federal Constitution and in violation of Article 2, §§ 7, 19, and 20 of the Oklahoma Constitution;

2. The trial court's exclusion of extrinsic evidence concerning Vernon Sutton's violent character deprived the defendant of his right to present a defense, to a fair trial, and to due process guaranteed by the Sixth and Fourteenth Amendments to the Federal Constitution and by Article 2, §§ 7, 19, and 20 of the Oklahoma Constitution;

3. Prosecutorial misconduct deprived Appellant of his constitutional right to a fair trial and due process of law, in violation of the Fifth, Sixth, and Fourteenth Amendments of the Federal Constitution and in violation of Article 2, §§ 7, 19, 20, and 21 of the Oklahoma Constitution;

4. Mr. Barnett was denied effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the Federal Constitution and Article 2, §§ 7 and 20 of the Oklahoma Constitution;

5. Appellant's conviction for second degree felony murder must be vacated because the merger doctrine prohibits using the act that caused the decedent's death as a predicate felony in a felony murder prosecution;

6. Under the unique circumstances of this case, imposition of a twenty-three year sentence for a seventeen-year-old offender is excessive and should be modified;

7. The accumulation of errors deprived Appellant of a fair trial and reliable verdict.

## FACTS

¶ 2 Appellant lived with his mother and younger sister in Okmulgee, Oklahoma. On the evening of August 21, 2008, he and two friends were standing outside his house when the decedent, Vernon Sutton, and another man pulled up to the house, got out of the car, and walked toward them. Sutton apparently knew one of the men standing with Appellant from prison. Appellant noticed that Sutton had one blue eye. A black man with one blue eye had raped his mother years before and been convicted of the crime. Appellant went inside and told his mother that the man who had raped her was standing in the yard.

¶ 3 Appellant's mother came outside to confront Sutton, who was in fact the convicted rapist who had assaulted her. She asked him if he remembered her. Sutton smiled and said he knew where he was. Appellant's mother angrily demanded that he leave. When he refused, Appellant picked up a length of lumber and went toward Sutton. Sutton prepared to fight, but a passing Okmulgee police officer intervened. When Appellant's mother explained who Sutton was, the officer made him leave the premises. Sutton smirked at Appellant and his mother and told them he would be back, and that he "had something" for them.

---

1. Appellant was originally charged with Count 1, conspiracy to commit murder, and Count 2, murder in the first degree. The jury acquitted Appellant of these charges and found him guilty of the lesser included offense of second degree felony murder in the commission of using a vehicle to facilitate the intentional discharge of a firearm, in violation of 21 O.S.Supp.2007, § 652(B).

2. Appellant must serve 85% of the sentence, pursuant to 21 O.S.Supp.2007, § 13.1(2).

¶ 4 Almost a month later, Appellant received a text from one of his friends, Breylon Griffin, who had been present during the confrontation with Vernon Sutton. Griffin's text told Appellant "dat n*gg*r's ova here" at another house in Okmulgee. Appellant called Griffin and learned that Sutton was visiting with some other men at a house in Okmulgee. Appellant called Jennifer McNac and asked her to give him a ride to that location. She initially refused but then changed her mind. Appellant was already walking toward the location when McNac picked him up.

¶ 5 As they neared the house, Appellant put the hood of his jacket over his head and covered his face with a bandana. When they reached the house where Vernon Sutton and others were standing, Appellant leaned out and fired three or four shots, fatally striking Sutton in the chest and abdomen. Five days after the shooting, Appellant told police in an interview that he was out of town when the shooting happened. At trial, Appellant admitted the shooting, but said he killed Sutton because he was afraid Sutton would come back to harm his family.

### ANALYSIS

¶ 6 In Proposition One, Appellant challenges the trial court's refusal to give requested instructions on self-defense and defense of another. We review the trial court's rulings on requested instructions for abuse of discretion. *Dill v. State*, 2005 OK CR 20, ¶ 11, 122 P.3d 866, 869. An instruction on a theory of defense is required "when evidence has been introduced at trial that is adequate to raise that defense, i.e., to establish a prima facie case" of that defense. *Malone v. State*, 2007 OK CR 34, ¶ 22, 168 P.3d 185, 196. Appellant's claim must fail. Evidence that Appellant feared Sutton does not raise an issue of self defense or defense of another, where the evidence showed that Appellant had no reasonable belief that he or his family were in imminent danger of being attacked or killed by Sutton at the time Appellant used deadly force. Instruction Nos. 8–2, 8–6, OUJI–CR(2d); *Perryman v. State*, 1999 OK CR 39, ¶ 9, 990 P.2d 900, 903–04. Proposition One is denied.

¶ 7 In Proposition Two, Appellant argues that the trial court erred in excluding certain evidence offered by the defense tending to prove the violent character of the victim. We review these rulings for abuse of discretion, and find none. *Hancock v. State*, 2007 OK CR 9, ¶ 72, 155 P.3d 796, 813. Proposition Two requires no relief.

¶ 8 Proposition Three claims that prosecutorial misconduct denied Appellant a fair trial. Due to the lack of a timely objection to any of the challenged statements, Appellant has waived all but plain error. *Matthews v. State*, 2002 OK CR 16, ¶ 38, 45 P.3d 907, 920. This Court will reverse for prosecutorial misconduct where grossly improper and unwarranted argument affects a defendant's rights. *Howell v. State*, 2006 OK CR 28, ¶ 11, 138 P.3d 549, 556. The comments challenged on appeal were not improper. *Warner v. State*, 2006 OK CR 40, ¶ 179, 144 P.3d 838, 888; *Hogan v. State*, 2006 OK CR 19, ¶ 91, 139 P.3d 907, 936. Proposition Three is denied.

¶ 9 Appellant argues in Proposition Four that he was denied the effective assistance of counsel. Appellant also filed an application for evidentiary hearing on his Sixth Amendment claims pursuant to Rule 3.11(B)(3)(b), *Rules of the Court of Criminal Appeals*, Title 22, Ch. 18 (2011), App. Ineffective counsel claims must overcome a strong initial presumption that counsel rendered reasonable professional assistance, by showing: (1) that trial counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. If Appellant demonstrates that counsel's representation was objectively unreasonable under prevailing professional norms, he must also show that he suffered prejudice, defined as a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial or sentencing would have been different *Hancock*, 2007 OK CR 9, ¶¶ 106–107, 155 P.3d 796, 821. To warrant an evidentiary hearing under Rule 3.11(B)(3)(b)(i), Appellant's application and supporting materials must set forth "sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was

ineffective for failing to utilize or identify the complained-of evidence." Reviewing Appellant's application and his arguments, we find no evidentiary hearing is required and no relief is warranted. Proposition Four is without merit.

■■■ ¶ 10 In Proposition Five, Appellant argues that his conviction for second degree felony murder violates the merger doctrine, or independent crime requirement, recognized by our case law in *Quillen v. State*, 2007 OK CR 22, 163 P.3d 587, and earlier cases. Although the State charged Appellant in Count 2 with first degree malice aforethought murder, the trial court also instructed the jury on the lesser included offense of second degree felony murder in the commission of using a vehicle to facilitate the intentional discharge of a firearm.[3] The jury acquitted Appellant of first degree murder, but convicted him of second degree murder in the commission of the underlying felony.[4] Counsel's failure to object to the second degree felony murder instruction at trial waived all but plain error. *Eizember v. State*, 2007 OK CR 29, ¶ 110, 164 P.3d 208, 236. We therefore consider whether Appellant's conviction of second degree murder in the commission of this underlying felony is plain error; that is, an error which goes "to the foundation of the case," or which takes from a defendant "a right which was essential to his defense." *Simpson v. State*, 1994 OK CR 40, ¶ 12, 876 P.2d 690, 695.

■■■ ¶ 11 Under this Court's merger doctrine, or independent crime requirement, "[i]n order for the taking of human life in the commission of a felony to constitute murder, the precedent felony must constitute an independent crime not included within the resulting homicide." *Sullinger v. State*, 1984 OK CR 44, ¶ 3, 675 P.2d 472, 473. The merger doctrine is a historical feature of our case law, and is not based on any statutory or constitutional text. *Quillen*, 2007 OK CR 22, ¶ 4, 163 P.3d at 589.[5] This Court in *Quillen* recently reaffirmed its adherence to the merger doctrine as it "has been applied in Oklahoma for many years," first being mentioned in *Jewell v. Territory*, 4 Okla. 53, 43 P. 1075 (Okla.1896), and "a part of Oklahoma's jurisprudence ever since." *Quillen*, 2007 OK CR 22, ¶ 3, 163 P.3d 587, 589.

¶ 12 In *Quillen*, the defendant was a drug addict who gave birth at the home of a friend. Believing that her baby was healthy, she took the baby home. The defendant also feared that child welfare officials would take the baby away from her at the hospital because of her cocaine use. Later that evening, the baby looked pale and his breathing seemed shallow. The defendant noticed blood in his diaper when she changed him. She called her grandmother for advice and then tied some string tightly around the baby's umbilical cord stump, and later fell asleep with the baby at her side. In the night, the baby bled to death through the umbilical cord, due to the defendant's failure to seek medical care. *Id.*, 2007 OK CR 22, ¶ 5 n. 3, 163 P.3d at 590 n. 3.

¶ 13 The State charged the defendant with first degree child abuse murder. The trial court also instructed the jury on the lesser included offense of second degree murder, in the commission of the underlying felony of

---

**3.** Title 21, O.S.Supp.2007, section 652(B) defines the elements of this offense:

Every person who uses any vehicle to facilitate the intentional discharge of any kind of firearm, crossbow or other weapon in conscious disregard for the safety of any other person or persons, including an unborn child as defined in Section 1–730 of Title 63 of the Oklahoma Statutes, shall upon conviction be guilty of a felony punishable by imprisonment in the custody of the Department of Corrections for a term not less than two (2) years nor exceeding life.

**4.** Homicide is second degree murder "[w]hen perpetrated by a person engaged in the commission of *any* felony *other than* the unlawful acts set out in [21 O.S.Supp.2006, § 701.7(B)]," i.e., the

first degree felony murder statute. (emphasis added). 21 O.S.2001, § 701.8(2).

**5.** Courts "have generally declined to hold that the merger doctrine implicates any principle of constitutional law." *State v. Godsey*, 60 S.W.3d 759, 774 (Tenn.2001). The merger doctrine we consider today is entirely separate from the principle of merger of offenses under the constitutional prohibition against multiple punishments for the "same offense" under the Double Jeopardy Clause. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Perry v. State*, 1993 OK CR 5, ¶ 7, 853 P.2d 198, 200–01 (convictions for both felony murder and underlying felony violate prohibition against double jeopardy).

child neglect.[6] The jury convicted the defendant of this lesser offense. *Id.*, 2007 OK CR 22, ¶ 1, 163 P.3d at 589. The appellant in *Quillen* argued on appeal that this conviction violated the merger doctrine, because her commission of felony child neglect—failing to get medical care for her newborn child—was not a felony independent from the homicidal act. The State argued that the plain language of the second degree murder statute authorized a conviction where the killing of a human being results from the commission of any felony other than the unlawful acts enumerated in the first degree felony murder statute. *Id.*, 2007 OK CR 22, ¶¶ 3–4, 163 P.3d at 589. The State reasoned that this Court's application of the merger doctrine to void a conviction authorized by the plain language of the statute would defeat legislative intent, and urged the Court to abandon the merger doctrine. *Id.*

¶ 14 This Court in *Quillen* rejected the State's arguments, finding that the merger doctrine was "not based on statutory language" but derived from policy considerations:

> [W]ithout the merger doctrine, any person who commits a felony, other than one enumerated for First Degree Felony Murder, from which a death that is not excusable or justified results, can be prosecuted for Second Degree Felony Murder. Although the State argues that such concerns are no longer viable, we find this argument unpersuasive. We further disagree with the State's argument that the merger doctrine is contra to clear legislative intent. The fact that this Court has recognized the merger doctrine for over one hundred years without legislative intervention lends credibility to the conclusion that this Court's application of the merger doctrine is not at odds with legislative intent.

*Id.*, 2007 OK CR 22, ¶ 4, 163 P.3d at 589–90 (*citing Tarter v. State*, 1961 OK CR 18, ¶¶ 40–44, 359 P.2d 596, 602). Based on the facts, the Court found that the merger doctrine required reversal of the murder conviction:

> [T]he felony charge upon which Appellant's Second Degree Felony Murder conviction is predicated, Child Neglect, was not separate from the act which caused the death. Therefore, we find that the underlying felony merged into the homicide and could not be used to sustain the Second Degree Felony Murder conviction.

*Id.*, 2007 OK CR 22, ¶ 5, 163 P.3d at 590. The Court also held that the appropriate remedy was to modify appellant's conviction to the underlying felony of child neglect. In this regard, the Court reasoned:

> In finding the Appellant guilty of Second Degree Felony Murder the jury necessarily found the evidence sufficient to prove the felony of Child Neglect beyond a reasonable doubt. Therefore, we modify Appellant's sentence to this lesser crime and modify the sentence to fifteen years imprisonment.

*Id.*, 2007 OK CR 22, ¶ 5, 163 P.3d at 589–90.

¶ 15 Appellant argues persuasively that the predicate felony of using a vehicle to facilitate the intentional discharge of a firearm is *not* independent from the homicidal act of shooting Vernon Sutton, and that his conviction therefore violates the merger doctrine set forth in *Quillen*. This case sharply presents the question of whether the merger doctrine remains an appropriate limitation of the statutory definition of second degree felony murder. After careful consideration, the Court abandons this judicially created limitation on second degree felony murder and overrules *Quillen*.

¶ 16 Since our decision in *Quillen*, the Court has continued its deliberations about the nature and purpose of the merger doctrine. Two judges dissented in *Quillen*. Judge Lumpkin's dissent questioned the need for the Court's modern application of the historic merger doctrine. He noted that at time of *Jewell v. Territory* in 1896, murder was not separated by degrees in the territorial statute, and felony murder—which carried a sentence of death or life imprisonment—included *all* felonies, as it had at common law.[7] The merger doctrine as we know

---

6. 21 O.S.Supp.2010, § 843.5(C).

7. 4 W. Blackstone, *Commentaries on the Laws of England* 200–01 (1st. ed. 1769)("Also in many

it today is found in the territorial supreme court's syllabus in *Jewell*, appended as a clause following a statement of the statutory felony murder rule:

> Homicide is murder, under the third subdivision [of the murder statute], "when perpetrated without any design to effect death, by a person engaged in the commission of any felony"; *and this means some felony as defined by statute other than that of the killing itself*

*Jewell*, 4 Okla. 53, 43 P. 1075 (syllabus)(emphasis added). Judge Lumpkin observed in *Quillen* that the "source of the language added to the statutory felony murder provision, and the language relied upon by this Court for years, is not clearly discernable" from the *Jewell* opinion, and the additional clause "was nothing more than a judicial attempt to legislate an amendment to a statute passed by the Legislature." *Quillen*, 2007 OK CR 22, 163 P.3d at 591 (Lumpkin, P.J., concurring in part and dissenting in part). Moreover, though the territorial supreme court in *Jewell* certainly mentioned the merger doctrine, the facts of that case did not call for its application. Thus, the doctrine's inaugural appearance on our jurisprudential scene was in *dicta*. *Id.*

¶ 17 Judge Lumpkin argued that the merger rule set out in *Jewell* and followed in later cases [8] originally developed in response to the draconian scope of the common law felony murder rule and similar statutes, like the territorial felony murder statute in *Jewell*. Those crimes were invariably capital, and without a merger doctrine, the commission *of any* felony that resulted in death, including circumstances that might ordinarily be manslaughter, would be subsumed in the broad statutory definition of murder and carry a possible death sentence. The merger doctrine was a humane, judicially crafted policy designed "to limit the application of first-

degree felony-murder when the Legislature had failed to do so." *Quillen*, 2007 OK CR 22, ¶¶ 5–6, 163 P.3d at 591–92 (Lumpkin, P.J., concurring in part and dissenting in part).

¶ 18 Evidence for this historical understanding of the merger doctrine abounds. In *Tarter v. State*, 1961 OK CR 18, ¶¶ 41–44, 359 P.2d 596, 601, the Court's discussion gave some background on the merger doctrine without directly applying it. The defendant in *Tarter* was convicted of murder. On appeal he argued the trial court should have instructed the jury on the lesser offense of manslaughter. *Id.*, 1961 OK CR 18, ¶¶ 1, 29, 359 P.2d at 600. The State responded that because the defendant killed the victim in the commission of an assault with a deadly weapon, he was at least guilty of felony murder, and no manslaughter instruction was required. *Id.*, 1961 OK CR 18, ¶ 40, 359 P.2d at 601. The Court rejected this suggestion out of hand, citing the syllabus from *Jewell*, and its statement that the defendant must commit "some felony as defined by statute other than that of the killing itself." *Id.*, 1961 OK CR 18, ¶ 41, 359 P.2d at 601–02.

¶ 19 The Court in *Tarter* also cited cases from Kansas and New York. In the New York case, *People v. Wagner*, 245 N.Y. 143, 156 N.E. 644 (1927), the defendant was convicted of felony murder based on the commission of a felonious assault on the victim that resulted in the death. The Court of Appeals of New York found this conviction was in error:

> We think it self-evident that the trial judge committed error when he charged that the killing of Peter Basto may have been effected while the defendant was engaged in a felonious assault upon him, and, basing their conclusion thereupon, might determine that the defendant was guilty of mur-

---

cases where no malice is expressed the law will imply it: ... And if one intends to do another felony, and undesignedly kills a man, this is also murder").

8. The merger doctrine has been directly applied in only a few cases in more than a century. *E.g.*, *Massie v. State*, 1976 OK CR 174, 553 P.2d 186, and *Tucker v. State*, 1984 OK CR 36, 675 P.2d 459 (both holding second degree murder convic-

tions for killing in the commission of beating or injuring child violated the merger doctrine, as the felonious acts were not independent of the homicides); and *Sullinger*, 1984 OK CR 44, 675 P.2d 472 (holding second degree felony murder conviction violated the merger doctrine, where underlying felony of aggravated assault and battery on corrections officer was not independent from the acts causing death).

der in the first degree. *If this were not error, then every intentional killing, by means of a dangerous weapon, regardless of deliberation and premeditation, would constitute the crime of murder in the first degree, since every such killing must be preceded by the direction of such a weapon against the body of the person killed, which in itself would constitute a felonious assault. The law is clear, however, that the precedent felony must constitute an independent crime not included within the resulting homicide.*[9]

*Id.* at 646 (*citing People v. Huter*, 184 N.Y. 237, 77 N.E. 6 (1906); *People v. Spohr*, 206 N.Y. 516, 100 N.E. 444 (1912)) (emphasis added). The Kansas case, *State v. Fisher*, 120 Kan. 226, 243 P. 291 (1926), also shows how the merger doctrine narrowed the definitional scope of the common law felony murder rule and statutes that followed it:

> It is the contention of the state that if murder is committed in the perpetration or the attempt to perpetrate any other felony it is murder in the first degree; hence, that if the boy, John Michael Foley, met his death at the hands of defendant while defendant was committing an assault with a deadly weapon, under such circumstances that it amounted to a felony under any statute pertaining thereto, the offense is murder in the first degree. This contention cannot be sustained. The effect of it would be to make any homicide, not excusable or justified, which, by our statute, is defined to be manslaughter in any of the degrees or murder in the second degree, to constitute murder in the first degree. In other words, mere could, under this interpretation of the statute, be no such thing as any lower degree of homicide than murder in the first degree.

*Id.* at 293; *see also*, T. Corcoran, *Felony Murder in New York*, 6 Fordham L.Rev. 43, 48 (1937)(arguing that "[m]urder in the second degree and some cases of manslaughter in the first and second degrees involve felonious assault on the person killed and yet if these assaults were not held to be merged in the homicide they would all be murder in the first degree," and noting that "[i]t is manifest that the doctrine of felony murder is in need of some reformation in New York").

¶ 20 Judge Lumpkin maintained in *Quillen* that the policy concerns justifying the merger doctrine in older cases like *Wagner* and *Fisher*—i.e., that every felonious assault resulting in death could be punished as murder without the necessity of proving malice—are no longer present in Oklahoma law.

> First-degree felony murder is now limited to a handful of enumerated felonies. Thus, the English common law policy decisions to escape the onerous penalties imposed on felony convictions are no longer viable. In addition, a plain reading and literal application of § 701.8(2) also will not subsume other forms of homicide. In addition to second-degree felony murder, a homicide is second-degree murder when committed by an act which is imminently dangerous to another person and evincing a depraved mind, but without any premeditated design to affect the death of any individual. Homicide is first-degree manslaughter when a killing is committed: 1) during the commission of a misdemeanor; 2) in the heat of passion; or 3) in an unnecessary attempt to prevent the person killed from committing a crime. Construing the second-degree murder statute together with the first-degree manslaughter statute, it is clear the Legislature intended for any felony, as defined by statute, to serve as the basis for a second-degree felony murder conviction unless the defendant was acting while in the heat of passion or in an unnecessary attempt to resist a crime. Further, second degree manslaughter is committed by a person who acts negligently, but does not commit a felony. Therefore, applying § 701.8 to any felony, not listed in § 701.7(B), does not subsume second-degree manslaughter.

---

9. The Court in *Tarter* noted that the Oklahoma murder statute in effect at the time (and since *Jewell v. Territory*) had been copied "almost verbatim" from the New York statute. Both of these statutes at the time defined the killing of a human being during the commission of *any* felony as an offense of capital (in New York, "first degree") murder. *Tarter*, 1961 OK CR 18, ¶ 43, 359 P.2d at 602.

*Quillen,* 2007 OK CR 22, ¶ 9 n. 4, 163 P.3d at 593 n. 4 (Lumpkin, P.J., concurring in part and dissenting in part)(internal citations omitted).

¶ 21 Judge Lumpkin concluded that the merger doctrine is a legal remnant that now frustrates, rather than advances, the proper enforcement of the statutes on felony murder.

> The Oklahoma Legislature has clearly enunciated its intent and set out the criteria for both first and second-degree felony murder ... Section 701.8(2) is recognition by the Legislature that a homicide can occur *during the commission of felonies other than those specifically enumerated under the first-degree felony murder statute and under circumstances not warranting a first-degree murder charge* Appellant's failure to seek medical attention for her son, which was inherently and potentially dangerous to her son's life in light of the facts and circumstances surrounding both the predicate felony and the homicide, brings this case within the historical definition of second degree felony murder [C]riminal liability for the baby's murder based upon Appellant's willful failure to seek medical attention (commission of the felony of child neglect) is an appropriate application of the second-degree felony murder statute.

*Quillen,* 2007 OK CR 22, ¶¶ 9–13, 163 P.3d at 593 (Lumpkin, P.J., concurring in part and dissenting in part)(emphasis added).

¶ 22 In my *Quillen* dissent, I argued that the Legislature "clearly authorized a conviction for second-degree murder in a case like this, where a homicide is 'perpetrated by a person engaged in the commission of any felony'" not enumerated in the first degree felony murder statute. *Id.,* 2007 OK CR 22, ¶ 3, 163 P.3d at 595 (Lewis, J., concurring in part and dissenting in part). In addition to the merger doctrine, the Court had already placed significant limitations on the plain language of the second degree felony murder statute, including the requirements of "a nexus between the underlying felony and the victim's death," and that the underlying felony "must be inherently or potentially dangerous to human life." *Id. (quoting Malaske v.*

*State,* 2004 OK CR 18, ¶ 5, 89 P.3d 1116, 1118).

¶ 23 Given these limitations, I found the Court's application of the merger doctrine unnecessary, and the unusual remedy of modifying the murder conviction to the underlying felony inconsistent with the merger theory itself:

> Despite the narrow purpose to which the merger rule is directed, the Court's decisions in this area now poise it to void a felony murder conviction whenever there is either too much criminal nexus or not enough: too little relationship between the felony and the killing and liability will not attach; too direct a relationship and the lesser and greater offenses "merge" to the same effect. To these judicial complications of a seemingly straightforward legislative policy, today's opinion adds a non-sequitur: *the lesser predicate crime first merges with the more serious act of killing and then (astonishingly) re-emerges to serve as the offense of conviction. The criminal homicide into which this lesser crime merged is then set at naught; its prosecution is abated forever. Previous findings of a merger violation resulted in reversal and remand for a new trial on a proper homicide charge. The remedy imposed here is unprecedented.*

*Quillen,* 2007 OK CR 22, ¶ 4, 163 P.3d at 595 (Lewis, J., concurring in part and dissenting in part) (*citing Massie,* 1976 OK CR 174, 553 P.2d 186; *Tucker,* 1984 OK CR 36, 675 P.2d 459; and *Sullinger,* 1984 OK CR 44, 675 P.2d 472) (emphasis added).

¶ 24 Today the Court finds that what began as an early judicial limitation on the harshness of felony murder at common law could readily usurp the modern Legislature's constitutional authority to reasonably define the crime of felony murder.

> The truth is that in this jurisdiction, no act is a crime unless made so by statute, and *where the crime is defined by statute such definition must be relied on rather than the common law* or some other definition of the act so classified as a crime.

*Traxler v. State,* 96 Okl.Cr. 231, 243, 251 P.2d 815, 829 (1953)(emphasis added). In inter-

preting and applying the criminal statutes, our purpose is to ascertain the intent of the Legislature, *State v. District Court of Oklahoma County*, 2007 OK CR 3, ¶ 11, 154 P.3d 84, 86, as evidenced primarily "in the ordinary meaning of the words of the statute construed in view of the connection in which they are used, and of the evil to be remedied." *Traxler*, 96 Okl.Cr. at 244, 251 P.2d at 829.

¶ 25 The Legislature has defined second degree felony murder as the killing of a human being perpetrated by a person "engaged in the commission of any felony other than" the enumerated felonies in the first degree felony murder statute. 21 O.S.2001, § 701.8(2). The term "any" is defined by *Webster's Third New International Dictionary* 97(Unabridged ed., 1986) as:

1b: one, no matter what one: EVERY— used as a function word esp. in assertions or denials to indicate one that is selected without restriction or limitation of choice;

2b: ALL—used as a function word to indicate the maximum or whole of a number or quantity.

We therefore interpret the phrase "any felony" in section 7018(2) to mean every felony other than those enumerated in the first degree felony murder statute. *See also, State v. Williams*, 24 S.W.3d 101, 115 (Mo.App.2000)(construing legislature's use of the phrase "any felony" as "all-comprehensive" in a felony murder statute).

¶ 26 In *State v. Harris*, 69 Wash.2d 928, 421 P.2d 662 (1966)(*en banc*),[10] the Supreme Court of Washington rejected the common law merger doctrine as a limitation on the statutory definition of second degree felony murder. In *Harris*, the defendant assaulted the victim, knocking her purse from her hand. When a .22 revolver tumbled from her purse, the defendant picked up the pistol and said, "I will kill all you sons of bitches." He then fired the pistol, fatally wounding the victim. In a non-jury trial, the court found no intent to kill the victim, but convicted the defendant of second degree felony murder, ruling that the defendant killed the victim in the commission of assault with a dangerous weapon. *Id.* at 663.

¶ 27 The defendant challenged the conviction on appeal, urging the supreme court to "adopt the New York 'merger rule,' which is that the precedent felony in a felony murder must constitute a crime not included in and independent of the homicide." *Id.; see also Wagner*, 156 N.E. at 646 (N.Y.1927), *supra*. Washington's felony murder statute, like Oklahoma's, distinguished between the crimes of first and second degree felony murder. The statute then in effect provided that the killing of a human being is murder in the second degree when "perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated" in the first degree felony murder statute. *Id. (quoting* Wash. Rev.Code § 9.48.040(2)).

¶ 28 The supreme court in *Harris* acknowledged that the harshness of New York's felony murder rule might justify the application of a merger doctrine, but declined to impose the merger limitation on Washington's murder statute. The Court reasoned that the legislative classification of felony murder and other criminal homicides by degrees with distinct factual elements rendered a merger doctrine unnecessary:

Our legislature ... has made its own distinction in the matter of homicides occurring while committing, attempting to commit, or in withdrawing from the scene of certain felonies. *If the felony be robbery, rape, burglary, larceny or arson in the first degree, the killing, though without design to effect death, is murder in the first degree. If the felony be other than the ones just named, the killing is murder in the second degree.* A homicide not coming within the first and second-degree murder statutes, and being neither excusable nor justifiable, is manslaughter.[11]

---

**10.** The Supreme Court of Washington's opinion in *Harris* was later abrogated by statutory amendment as recognized by *In re Personal Restraint of Andress*, 147 Wash.2d 602, 56 P.3d 981, 983, and that abrogation was later reversed by statutory amendment as recognized by *In re Personal Restraint of Alvarez*, 127 Wash.App. 1050, 2005 WL 1300720 (Wash.App.2005)(not in P.3d).

**11.** Compare 21 O.S.2001, § 711 (defining elements of manslaughter in the first degree).

The legislature has also specifically designated certain killings as manslaughter, i.e., killing unborn quick child;[12] killing by a vicious animal;[13] killing by overloading passenger vessel; killing by reckless operation of steamboat or engine; killing by intoxicated physician while treating a patient;[14] killing as result of unlawful keeping of explosives.[15] It has also added to our lexicon the crime of negligent homicide by means of a motor vehicle.[16]

In light of the distinctions made in our own statutes, we see no reason why we should adopt the New York 'merger rule,' i.e., that the precedent felony, if an assault on the person killed, is merged in the resulting homicide....

In Washington, the felony murder must occur in the commission of, an attempt to commit, or in withdrawing from the scene of a felony, and must not be separate, distinct, and independent from it. *Our legislature further avoided the merger problem by specifically designating the felonies which result in a first or second-degree felony murder charge. Since an assault felony comes within the ambit of second-degree murder, the state must prove intent and premeditation in order to secure a first-degree murder conviction. Thus the rationale behind the New York merger rule is not applicable in Washington.*

*Id.* at 664–65 (internal citations omitted). We find the reasoning of *Harris* reflective of the situation in Oklahoma, and conclude that the current legislative classification of criminal homicides by their respective degrees, defined by distinct factual elements, obviates the need for the merger doctrine.

¶ 29 The case before us today well illustrates the objectionable effects of the merger doctrine when applied to the facts. Riding from a protected position in a passing vehicle, Appellant repeatedly fired on an unsuspecting group of people standing near the street and killed a man. This fatal attack was neither excusable nor justifiable, and therefore it was a criminal homicide, either murder or manslaughter, under Oklahoma law. 21 O.S.2001, § 692 (homicide is either murder; manslaughter; excusable homicide, or justifiable homicide). The jury at trial clearly rejected the charge of malice aforethought murder. However, when the jury found Appellant guilty of second degree felony murder, it *necessarily* concluded, beyond a reasonable doubt, that Appellant feloniously used a vehicle to facilitate the intentional discharge of a firearm; that he did so "in conscious disregard for the safety of any other person or persons"; and that he caused the death of a human being as a result.

¶ 30 Application of the merger doctrine in this case, by reversing Appellant's second degree murder conviction and modifying his conviction to the underlying felony, would be a miscarriage of justice. The *mens rea* associated with this type of drive-by shooting is either the malice aforethought of first degree murder, i.e., "that deliberate intention unlawfully to take away the life of a human being," 21 O.S.Supp.2006, § 701.7(A), which can be "inferred from the fact of killing," and "may be formed instantly" before the fatal act, 21 O.S.2001, §§ 702, 703; or the "depraved mind" emblematic of second degree murder, i.e., perpetrating an imminently dangerous act, "regardless of human life, although without any premeditated design to effect the death of any particular individual." 21 O.S. 2001, § 701.8(1). As a matter of history and policy, it is entirely reasonable for the Legislature to punish the killing of a person during the commission of this type of dangerous

---

12. Compare 21 O.S.2001, § 714 (procuring destruction of unborn quick child as first degree manslaughter).

13. Compare 21 O.S.2001, § 717 (owner of mischievous animal that kills another is guilty of manslaughter in the second degree).

14. Compare 21 O.S.2001, § 712 (killing of patient by intoxicated physician is manslaughter in the first degree).

15. Compare 21 O.S.2001, § 1368 (unlawful possession of explosives a felony); 21 O.S.Supp. 2010, § 1767.1 (use or threatened use of explosives).

16. Compare 47 O.S.Supp.2005, § 11–903 (negligent homicide involving reckless operation of vehicle).

felony as murder in the first or second degree.

¶ 31 The felony crimes of assault and battery, child neglect, caretaker abuse and neglect, operation of a motor vehicle while intoxicated, unlawful possession and use of firearms and explosives, using a vehicle to facilitate intentional discharge of a firearm, and a host of other felonies, can have deadly consequences. The Legislature is well within reason to define killings during the commission of these dangerous felonies as murder, even when the felony is not "independent" of the act or acts resulting in death. Indeed, it is when such felonies destroy life that they are most deserving of the infamy and punishment of murder. Continued adherence to the merger doctrine, and the remedy as established in *Quillen*, would, in many instances, nullify the proper exercise of the Legislature's power to define and punish murder. We will not follow that course.

¶ 32 Appellant killed a human being in the commission of using a vehicle to facilitate intentional discharge of a firearm. He is, at the very least, guilty of second degree murder under the plain language of section 701.8(2) of Title 21. His conviction for that offense is authorized by statute, and no plain error occurred. To the extent that *Quillen*, and earlier cases recognizing the merger doctrine as a limitation on the statutory definition of second degree felony murder, including *Massie*, 1976 OK CR 174, ¶ 16, 553 P.2d 186, 191, *Tucker*, 1984 OK CR 36, ¶ 3, 675 P.2d 459, 461, *Sullinger*, 1984 OK CR 44, ¶ 3, 675 P.2d 472, 473, and *State v. McCann*, 1995 OK CR 70, ¶ 3, 907 P.2d 239, 240, are inconsistent with our ruling today, those cases are overruled. Proposition Five is denied.

¶ 33 In Proposition Six, Appellant argues that his sentence is excessive. We find that the sentence of twenty-three (23) years imprisonment does not shock the conscience of the Court and requires no relief. *Rea v. State*, 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149.

¶ 34 Appellant in Proposition Seven argues that reversal or modification is required due to cumulative error. As we find no error, there is no accumulation of error. Proposition Seven is denied. *Smith v. State*, 2007 OK CR 16, ¶ 81, 157 P.3d 1155, 1179.

## DECISION

The Judgment and Sentence of the District Court of Okmulgee County is **AFFIRMED**. Pursuant to Rule 3.15, Rules of the Court of Criminal Appeals, Title 22, Ch. 18, App. (2011), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J. and C. JOHNSON, J. specially concur.

LUMPKIN, J. and SMITH, J. concur.

A. JOHNSON, Presiding Judge, SPECIALLY CONCURRING.

¶ 1 I agree with the decision to abandon the merger doctrine as a limitation to second degree felony murder. The purpose of the merger limitation—to bring fairness to the potential harshness of the felony murder rule—is a sound one. A fair and consistent application of this particular limitation, however, is difficult. In *Quillen v. State*, 2007 OK CR 22, 163 P.3d 587, this Court extended the application of the merger doctrine to the non-assaultive crime of felony child neglect in an apparent attempt to achieve a fair and appropriate balance between moral culpability and criminal liability in that case. This broad application of the merger limitation and the difficulty of its application in *Quillen* lead me to reexamine the continued validity of the merger limitation in this case. There may be future cases that test the wisdom of this decision. Nevertheless, I am confident that this Court's expressed commitment to maintaining the distinction between the different degrees and forms of murder, manslaughter and other homicide crimes will resolve any issues of unfair over-charging and undeserved convictions and sentences.

C. JOHNSON, Judge, SPECIALLY CONCURRING.

¶ 1 It is with some hesitation that I concur in the Court's decision in this case to abandon the merger doctrine. The merger doctrine operates to preserve the different degrees of homicide crimes. I understand the

position of the majority regarding the historical context in which the merger doctrine developed, but I do not agree that the problem the merger doctrine seeks to remedy has been eliminated by the legislative classification of differing degrees of homicide. Second Degree Felony Murder allows a person who commits any felony other than one enumerated for First Degree Felony Murder, from which a death results that is not excusable or justified, to be prosecuted for Second Degree Felony Murder. The prosecutors make the determination of which crime to charge and the abandonment of the merger doctrine allows them, under these circumstances, unrestrained discretion to charge the greater offense of Second Degree Felony Murder to the exclusion of lesser degrees of homicide. Thus, in the absence of the merger doctrine, it will be even more important that district courts give instructions on lesser forms of homicide where such instructions are supported by the evidence as is required by *Shrum v. State*, 1999 OK CR 41, 991 P.2d 1032.